**DeKALB REAL ESTATE BOARD, INC., d/b/a DeKalb Board of Realtors, et al.,**

v.

**CHAIRMAN AND BOARD OF COMMISSIONERS OF ROADS AND REVENUES FOR DeKALB COUNTY, GEORGIA, et al.**

**Empire Real Estate Boards, Inc., et al., Plaintiff Intervenors.**

**Civ. A. No. 17391.**

United States District Court, N. D. Georgia, Atlanta Division.

Aug. 22, 1973.

New Trial Denied Oct. 26, 1973.

Harold L. Russell, Wayne T. Elliott, Gambrell, Russell, Killorin, Wade & Forbes, Bernard Parks, Jackson, Patterson, Parks & Franklin, Wyatt & Zagoria, P. A., Atlanta, Ga., for plaintiffs.

George P. Dillard, Herbert O. Edwards, Decatur, Ga., for defendants.

## ORDER

O'KELLEY, District Judge.

This is an action for declaratory and injunctive relief contesting the validity of a DeKalb County, Georgia Ordinance regulating the method of advertisement and manner of selling residential property.[1] Relief is sought pursuant to alleged violations of 42 U.S.C. §§ 1982, 1983 (1970). Federal jurisdiction is founded upon 28 U.S.C. § 1343 (1970) and 28 U.S.C. §§ 2201, 2202 (1970).[2]

The Board of Commissioners of DeKalb County, Georgia, adopted, on October 30, 1972, an Ordinance to amend the Code of DeKalb County (Part II, Chap-

---

1. To aid in reading this opinion the Ordinance in its entirety is set out in the Appendix.

2. Jurisdiction exists by virtue of 28 U.S.C. § 1343(3) and (4) which provides that the district courts have original jurisdiction of any civil action:

> (3) To redress the deprivation, under color of any . . . ordinance . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
> (4) . . . to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

28 U.S.C. § 1343(3), (4) (1970).

The rights secured by the Constitution and Acts of Congress are alleged to fall under

42 U.S.C. § 1982 which provides, in part, that:

> All citizens of the United States shall have the same right, in every State . . . as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982 (1970).

Furthermore, the plaintiffs claim rights under 42 U.S.C. § 1983 which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1970).

ter 13), by adding provisions to regulate the posting of "For Sale" signs in residential areas; to control the soliciting of residential property for sale; and to prohibit certain practices in the sale of real estate deemed to be unlawful. This Ordinance specifically provided, among other provisions, that the posting of a "For Sale" sign on residential property, ". . . bearing the name of any real estate firm, broker, associate broker or salesman shall be prima facie evidence of a violation of the Ordinance."

The DeKalb Real Estate Board, and certain real estate brokers, filed suit against the Board of Commissioners of Roads and Revenues of DeKalb County under 42 U.S.C. § 1983 (1970) seeking preliminary injunctive relief from the enforcement of certain specific provisions of the Ordinance. A hearing was held, and on November 14, 1972, the day before the Ordinance was to go into effect, this Court entered a preliminary injunction enjoining the defendants from enforcing Section III(f), Section IV 2(a), Section V, para. 3, and Section VI, para. 3, of the Ordinance.

Also plaintiffs in this case are intervenor Empire Real Estate Board, Inc., a trade organization representing black realtors, and others, who filed a motion to intervene as plaintiffs, alleging a deprivation of constitutional and statutory rights under 42 U.S.C. § 1982 (1970) and 42 U.S.C. § 1983 (1970). In order to assure that their respective interests would be protected, this Court granted the plaintiff-intervenor's motion to intervene on February 7, 1973.

A full hearing on the merits of this cause was held by the Court on July 2, 3, and 5, 1973, and the findings of fact and conclusions of law are incorporated herein.

## I.

The plaintiffs in this case attack the validity of the DeKalb County Ordinance on the ground that it violates a number of constitutional and statutory guarantees. Their arguments, stated in various ways, reduce basically to this: That Section III(f) violates the equal protection clause of the fourteenth amendment by creating a classification which discriminates against brokers, and the due process clause of the fourteenth amendment by creating an arbitrary presumption of guilt; that Section IV(2) violates the first amendment rights of brokers, homeowners, and purchasers because of its overbreadth and vagueness; and that the Ordinance is racially discriminatory in violation of the equal protection clause and the Civil Rights Acts of 1866 and 1968.

Specifically, the three provisions of the Ordinance against which the plaintiffs seek relief are:

(a) That part of Section III which provides:

The display on any residential property of any sign, poster, billboard or other advertising device bearing the name of any real estate firm, broker, associate broker or salesman shall be prima facie evidences of a violation of this Ordinance.

(b) That part of Section IV which provides:

It shall be unlawful for any real estate broker or dealer or any person acting as his own real estate agent in selling, trading or otherwise changing the ownership of any residential property:

(a) to make any representation in connection with the purchase, sale, or rental of any residential property, that there will or may be physical deterioration of dwellings in any block, neighborhood or area.
. . .

(c) That part of Section VI which provides that the Board of Commissioners "may hear whatever witnesses it deems best. . . ." [3]

---

3. The plaintiffs also contend that, under the theory of Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), this ordinance infringes upon the fundamental right to travel. This contention is without merit. In *Shapiro*, a penalty was im-

## II.

■ As a threshold issue, this Court needs to determine the propriety of federal intervention in this controversy. The defendants have contended that under the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), that this Court should refrain from reaching the constitutional questions presented in order to avoid interference with the local enforcement of a penal Ordinance. As stated in an earlier Order, this Court does not agree. Civil No. 17391 (Feb. 7, 1973)

In *Younger,* four California residents challenged the state's Criminal Syndicalism Act. A three-judge federal district court found the Act to be void for vagueness and overbreadth and enjoined the state from further prosecuting a pending criminal action against Harris. The Supreme Court reversed, and a majority of the Court held that a district court cannot enjoin a pending state prosecution unless the plaintiff can prove the presence of an "irreparable injury" that is ."both great and immediate." The Court explained that where a state criminal proceeding is pending, irreparable injury is not established merely because the Act is overbroad or vague on its face, but rather the plaintiff must show "bad faith, harassment, or any other unusual circumstances that would call for equitable relief." *Id.* at 54, 91 S.Ct. at 755.

In a companion case, Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L. Ed.2d 688 (1971), the Supreme Court held that where a state prosecution was actually pending ". . . the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment. . . ." Id. at 73, 91 S.Ct. at 768.

This Court feels that the policy considerations enunciated in *Younger* and

*Samuels* have no application in this case where no prosecution is pending under the challenged Ordinance. This holding is supported by the case of Hobbs v. Thompson, 448 F.2d 456 (5th Cir. 1971), where the Fifth Circuit held that *Younger* does not bar a suit seeking relief from the enforcement of a city ordinance prohibiting political activity by firemen. This conclusion was grounded on the fact that federal intervention would have no effect on a pending state proceeding. In reaching this holding the Court stated:

> To hold that *Younger* erects a general barrier to federal relief in situations such as presented in the instant case would be to ignore the rationale of the opinion and to reject a long history of accepted jurisprudence. We simply do not think that *Younger* intended to proscribe completely the federal judicial role in the vindication of federal rights. To apply that decision outside its intended sphere—the well-established doctrine of comity restraints against federal interference with pending state criminal proceedings—would be in direct contradiction to the purposes of the Civil Rights Act. . . . *Id.* at 466.

This Court feels that the reasoning in *Hobbs* applies to the present case. Both *Younger* and *Samuels* put emphasis on the existence of the state criminal proceeding which was pending. Neither of these cases ". . . purport to extend beyond this traditional realm of comity and require across-the-board abdication of federal decisionmaking power in all manner of cases." 448 F.2d at 465. This Court therefore holds that the special comity considerations are not present here and that the federal court is the appropriate forum to determine the party's rights under the Ordinance.

## III.

■ The defendant has continuously assailed this Court's Order of May 14,

---

posed on those, and only those, who exercised their fundamental right to travel. Here, the ordinance merely regulates the manner in which one may advertise his

property for sale. *See* Barrick Realty, Inc. v. City of Gary, 354 F.Supp. 126 (N.D.Ind. 1973).

1973,[4] interpreting Section III(f) of the Ordinance as prohibiting ". . . the posting of signs, etc. by real estate brokers, associate brokers or salesmen, but [that it] does not prohibit the posting of signs by owners." The defendant urges that this is a strained interpretation of the Ordinance and one that was not intended. There was testimony at the trial that it was the intention of the DeKalb Board of Commissioners to ban all residential "For Sale" signs whether posted by homeowner-sellers or brokers selling for homeowners. However, as this Court reads the Ordinance, it prohibits only "For Sale" signs carrying the name of a broker or salesman. Section III of the Ordinance states that it ". . . shall be unlawful for any real estate broker . . . to solicit residential property for resale by himself, his firm . . . *or by any person acting as his own real estate agent in selling . . . any residential property.*" (emphasis added). This Court rejects any attempt to read—"or by any person acting as his own real estate agent"—so as to include a homeowner-seller. This is made clear by a reading of the last sentence of III(f) which provides that the display of a sign carrying the name of a broker "shall be prima facie evidences of a violation of this ordinance by the parties named thereon." No mention is made here of the effect of a homeowner posting his own sign. If the Section III language of—"any person acting as his own real estate agent"—is read to mean homeowner-sellers, the posting of a "For Sale" sign by such homeowner would violate the Ordinance under Section III only if done with "the intent to commit an unlawful real estate practice" as defined in Section IV. Such an interpretation by this Court would mean that a homeowner-

seller displaying a sign would violate the Ordinance only if done with "intent to commit an unlawful real estate practice" whereas a broker-seller who displays his sign *prima facie* has committed a violation of the Ordinance. This Court refuses to read the Ordinance in this manner.

## IV.

The plaintiffs claim that the presumption of a violation of the Ordinance by the display on residential property of a "For Sale" sign invades the due process rights of the plaintiff-brokers. Section III(f) of the DeKalb County Ordinance provides, in part, that:

> The display on any residential property of any . . . advertising device bearing the name of any real estate firm, broker . . . shall be prima facie evidences of a violation of this ordinance by the parties named thereon.

This Court has previously held that the ". . . actions enumerated in Section III, [Paragraph (f)] are unlawful only if, as stated in that section, they are done or made 'with the intent to commit an unlawful real estate sales practice. . . .'" From this, the Court interprets the Ordinance to mean that the *mere* posting of a sign creates a prima facie case that a broker *intentionally* violated the unlawful practices enumerated in Sections III and IV of the Ordinance.

The due process clause of the fourteenth amendment sets limits upon the power of the state to make the proof of a fact evidence of the existence of an ultimate fact upon which guilt is predicated. The test to determine the validity of the presumption created by this Ordinance is whether there is "a rational connection between the facts proved

4. The May 14, 1973 Order concluded that: This Court is of the opinion that the term 'unlawful real estate sales practice' as used in Section III refers to the definition of that term as set out in Section IV, and that the actions enumerated in Section III, paragraphs (a) through (f) are unlawful only if, as stated in that Section, they are done or made 'with the intent to commit an unlawful real estate sales practice as hereinafter defined.' Furthermore, the Court must agree with the plaintiffs' interpretation of Section III(f) of the Ordinance. The Court believes that Section III(f) prohibits the posting of signs, etc. by real estate brokers, associate brokers or salesmen, but does not prohibit the posting of signs by owners.

and the fact presumed." Tot v. United States, 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519 (1943). Furthermore, such a presumption will not be upheld ". . . if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience." *Id.,* *See also* Morrison v. California, 291 U. S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1934).

■ The issue presented here is whether there is a rational connection between the existence of a "For Sale" sign located on residential real estate carrying the name of a broker and the presumption that the broker has violated the Ordinance. This Court finds that the connection between the fact proved and the presumption created by the Ordinance is not sufficient. Section IV of the Ordinance which defines "Unlawful Real Estate Sales Practices" includes as an unlawful activity what is commonly termed, under state and federal law, as "blockbusting." It stretches credibility to think, absent proof of some other action, that the posting of a sign carrying a broker's name bears a rational connection or even tends to prove that the broker was engaged in "blockbusting" activities. In Morrison v. California, 291 U.S. at 90, 54 S.Ct. at 285, it was stated: "For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance." As to the violation of the Ordinance here, the presumption created sweeps in acts which ordinarily are considered to be normal activities of a broker. Accordingly, the Court holds that the presumption created by Section III(f) of this Ordinance is arbitrary and unreasonable so as to amount to a denial of due process in violation of the fourteenth amendment to the Constitution.

## V.

As previously discussed, the DeKalb County Ordinance permits the posting of "For Sale" signs by homeowner-sellers, but prohibits the display of such signs by a broker. It is argued by the plaintiffs that this classification has a dis-criminatory impact on brokers in violation of the fourteenth amendment to the United States Constitution.

■ There can be no doubt that the fourteenth amendment does not absolutely deny a state the power to set up classes of persons and treat them differently. *See* Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); McDonald v. Board of Election Commissioners, 394 U.S. 802, 89 S. Ct. 1404, 22 L.Ed.2d 739 (1969). This is especially true in the area of economic and social welfare. *See, e. g.,* Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970). What the fourteenth amendment does do, however, is to deny to states the power to put persons into classes based upon criteria unrelated to the purpose of the legislation. A classification by the state ". . . must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation. . . ." F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S. Ct. 560, 562, 64 L.Ed. 989 (1920). In examining the facts in light of the above discussion, this Court finds that Section III of the Ordinance violates plaintiff's rights under the fourteenth amendment for two reasons: (a) The discriminatory classification is wholly unrelated to the objective of the Ordinance, and (b) the purpose of the Ordinance is constitutionally impermissible.

■ From the evidence introduced at trial, the situation sought to be alleviated by the Ordinance is what is called "panic selling" by white residents when a black family purchases a home in what was formerly an all white neighborhood. The defendant asserts that numerous "For Sale" signs appearing in a neighborhood aggrevate the fear of white residents, produce "panic selling," and eventually results in a racial transformation of an area. Whether or not this rationale is correct, this Court need not decide, *but see* Barrick Realty, Inc. v. City of Gary, 354 F.Supp. 126 (N.D. Ind.1973), for the classificatory scheme created by the Ordinance is not reasona-

bly related to this purpose. In this connection, the Court fails to see a "reasonable relationship" behind the prohibition of a broker from displaying a "For Sale" sign, but allowing a homeowner-seller to do so, for both types of signs signify the same thing—that the house is for sale, and both types of signs arguably produce the same result—"panic selling." The defendant sought to avoid this finding by producing evidence that the cause of the panic selling was the existence in a neighborhood of "For Sale" signs displaying the name of brokers known to be black real estate agents who predominantly sell only to black families. If, in fact, the ultimate purpose of the Ordinance was addressed to this problem, then this Court finds a racially discriminatory effect in the prohibition of "For Sale" signs. In line with this, the Court takes judicial notice that brokers (who are prohibited from posting "For Sale" signs) are subject to the provisions of the Fair Housing Act and must sell regardless of race, whereas a homeowner-seller (who is not, under the Ordinance prohibited from posting "For Sale" signs) is not subject to the Fair Housing Act. *See* 42 U.S.C. §§ 3603, 3604 (1970). This fact, coupled with the purpose of the Ordinance— "stablization of neighborhoods" may have the ultimate effect of freezing in past discrimination, denying blacks a fair opportunity to find suitable housing.

## VI.

■ It is urged by the plaintiffs that Section IV (a) of the Ordinance is invalid on its face for its vagueness and overbreadth, in that it sweeps too broadly into areas of protected first amendment rights. Section IV 2(a) provides that it is unlawful for any real estate broker ". . . to make *any representation* in connection with the purchase, sale, or rental of any residential property, that there is or may be physical deterioration of dwellings in any block, neighborhood, or area." (emphasis added). This Court has closely examined the challenged provision and is

of the opinion that it is unconstitutionally vague and overbroad.

■ The United States Supreme Court has held that a statute which leaves an ordinary man so doubtful as to its meaning, that he cannot know when he has violated it, denies him due process. *See* Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The test that has been enunciated is whether the terms are ". . . so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. . . ." *Id.* at 391, 46 S. Ct. at 127. Applying this principle to the language of the Ordinance, the conclusion is inevitable that the clause forbidding *all* representations as to the "physical deterioration of dwellings in any block, neighborhood or area" is worded in such generality that it leaves one guessing at its meaning. Neither the term "physical deterioration," nor what constitutes a "representation" is defined. There lacks a definite standard and no one can read the Ordinance and ascertain exactly what it prohibits. A conscientious broker or homeowner-seller honestly attempting to comply with the Ordinance would be continuously in doubt as to what he can or cannot say. Because of the vagueness of this provision, it is conceivable that most brokers would avoid all representations concerning the physical condition of property rather than risk revocation of their broker's license. Such a result is clearly unacceptable, especially when measured by the importance of vagueness and overbreadth in a sensitive area such as free speech. Such an interference with speech must be carefully and narrowly drawn.

Moreover, this Court also finds that the challenged phrase is invalid because of the breadth of its possible application, which goes far beyond what is necessary to achieve any legitimate governmental purpose that DeKalb County may have. As stated in Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), this Ordinance ". . . does not aim specifically at

evils within the allowable area of State control, but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech. . . ." The Ordinance here prohibits *"any* representation" concerning physical deterioration of dwellings in *any block, neighborhood, or area."* This phrase sweeps too broadly and proscribes representations—both legal and illegal—which are unrelated to the purpose of the Ordinance—"stabilization of neighborhoods."

## VII.

The plaintiff also attacks that part of Section VI which provides that upon a hearing ". . . the person convicted may make whatever defenses he may have and the Board may hear whatever witnesses it deems best. . . ." It is urged that such a provision violates the due process clause of the fourteenth amendment by denying a fair hearing. In so contending the plaintiffs seem to interpret the above provision to mean that the Commission may select and limit the witnesses which a broker may produce on his behalf at a license revocation proceeding. Although admittedly the provision is somewhat ambiguous, this Court does not interpret it in this manner. What the Court considers a fair reading of the provision to mean is that the broker "may make whatever defenses he may have," including the use of witnesses on his behalf, and the Board of Commissioners may hear additional witnesses as "it deems best."

## VIII.

In summary, this Court holds that Section III(f) of the DeKalb County Ordinance violates the due process and equal protection clauses of the fourteenth amendment; Section IV 2(a) is in violation of the first amendment because of its overbreadth and vagueness; and that the Ordinance is racially discriminatory in violation of the equal protection clause of the fourteenth amendment.

Accordingly the defendants, their agents, and all persons in active concert or participation with them be and each of them are hereby enjoined from enforcing Sections III(f), and IV(2)(a) of the DeKalb County Ordinance.

## APPENDIX

### AN ORDINANCE

AN ORDINANCE TO AMEND THE CODE OF DEKALB COUNTY, PART II CHAPTER 13 BY ADDING THERETO PROVISIONS TO REGULATE THE SOLICITING OF RESIDENTIAL PROPERTY FOR SALE OR RESALE; TO REGULATE THE POSTING OF SIGNS IN RESIDENTIAL AREAS AND TO PROHIBIT CERTAIN PRACTICES IN THE SALE OF REAL ESTATE DEEMED TO BE UNETHICAL AND UNLAWFUL, AND FOR OTHER PURPOSES.

*Be it ordained by the Board of Commissioners of DeKalb County, Georgia, and it is hereby ordained by the authority of same* that the Code of DeKalb County, Part II Chapter 13 be amended by adding thereto the following provisions to be appropriately numbered:

SECTION I *Policy Declaration*

It is hereby declared to be the policy of the Board of Commissioners and the purpose of this Ordinance to promote fair dealing in real estate transactions in residential areas of the unincorporated areas of DeKalb County; to maintain community stability and security; and to foster racial and social harmony for the health, welfare and morals of the citizens of DeKalb County.

SECTION II *Definitions*

1. "Chairman" means the chairman of the Board of Commissioners of DeKalb County, Georgia.

2. "Commission" means the Board of Commissioners of DeKalb County, Georgia.

3. "Residential District" Any district of use the primary purpose of which is for residential dwelling units including,

but not limited to, the R Districts, the R M Districts, the C D Districts, and the O I District when used for high-rise apartments.

4. "Residential Property, or Dwelling Units" means one or two family residence.

5. "Real Estate Broker," "Associate Broker" and "Real Estate Salesman" Whenever used, "real estate broker" means any person, association, co-partnership, firm, or corporation, who for another and for a fee, commission or other valuable consideration:

(a) Sells, buys, exchanges, rents, auctions, or offers or attempts to negotiate a sale, exchange, purchase or rental, or lists or solicits prospective purchasers of any estate or interest in real estate, or collects, or offers or attempts to collect rent for the use of real estate;

(b) Aids, assists, solicits or negotiates the procurement, sale, purchase, rental or lease of public lands;

(c) Buys or offers to buy, sells or offers to sell, or otherwise deals in options on real estate or the improvements thereon;

(d) Collects, or offers or attempts to agree to collect, rental for the use of real estate or the improvements thereon;

(e) Shall direct or assist in the procuring of prospects, or the negotiation or closing of any transaction which does, or is calculated to result in a sale, exchange, or leasing thereof, and who shall receive, expect, or be promised any compensation or valuable consideration, directly or indirectly therefor;

(f) Are persons who are members of partnerships or officers or directors of corporations engaged in performing any of the aforesaid acts or services;

(g) Advertises through signs, newspapers, or otherwise as operating or conducting a real estate office or real estate business.

"Associate broker" whenever used in this Chapter shall mean: An associate broker is one who has all of the qualifications, duties, liabilities and otherwise of a licensed broker as contained and set forth in this Chapter and who is a duly licensed broker in his own right.

"Real estate salesman" whenever used in this Chapter shall mean: A person employed by a licensed real estate broker to sell or offer for sale, to buy or offer to buy, to negotiate the purchase, sale or exchange of real estate, or to lease, rent or offer to lease, rent or place for rent any real estate for or on behalf of such real estate broker; also any person, other than bookkeepers and stenographers, employed by any real estate broker, as that term is defined in this section.

6. "Real Estate Office" means an office or other place of business which is primarily engaged in the business of selling, buying, leasing, or renting real property; listing real property for sale, purchase, lease or rental; or providing brokerage services in connection with such selling, buying, leasing, renting, or listing.

SECTION III *Unlawful Solicitation Practices*

It shall be unlawful for any real estate broker, associate broker or salesman to solicit residential property for resale by himself, his firm, or by any person represented by him or his firm or by any person acting as his own real estate agent in selling, trading or otherwise changing the ownership of any residential property.

To solicit as herein used means: to request, invite, or induce, with the intent to commit an unlawful real estate sales practice as defined hereinafter by any means, including, but not limited to:

(a) to go in or upon the property of the person to be solicited, except when invited by such person;

(b) to communicate with the person to be solicited by mail, telephone, telegraph or messenger service,

except when requested by such persons;

(c) to canvass in streets or other public places;

(d) to distribute handbills, circulars, cards or other advertising matter;

(e) to use loudspeakers, soundtracks, or other voice-amplifying equipment;

(f) to display signs, posters, billboards, or other advertising devices other than signs placed upon a real estate office for the purpose of identifying the occupants and services provided therein, provided, however, that the term "to solicit" shall not include to advertise in newspapers of general circulation, magazines, radio, television, or telephone directories. The display on any residential property of any sign, poster, billboard or other advertising device bearing the name of any real estate firm, broker, associate broker or salesman shall be prima facie evidences of a violation of this ordinance by the parties named thereon.

## SECTION IV *Unlawful Real Estate Sales Practices*

1. It shall be unlawful for any real estate broker or dealer or any agent or employee of a real estate broker or dealer, or any person acting as his own real estate agent in selling, trading or otherwise changing the ownership of any residential property except in honest reply to an unprompted question by a prospective buyer or seller:

(a) to represent, for the purpose of inducing or discouraging the purchase, sale, or rental, or the listing for purchase, sale, or rental, of any residential property, that a change has occurred or will or may occur in the racial or religious composition of any block, neighborhood, or area.

(b) to represent, for the purpose of inducing or discouraging the purchase, sale, or rental or the listing for purchase, sale, or rental of any residential property, that the presence of persons of any particular race, religion or ethnic background in an area will or may result in:

(1) a lowering of property values in the area;

(2) change in the racial, religious or ethnic composition of the area;

(3) an increase in criminal or anti-social behavior in the area; or

(4) a change in the racial, religious or ethnic composition of school or other public facilities or services in the area.

2. It shall be unlawful for any real estate broker or dealer or any agent or employee of a real estate broker or dealer or any person acting as his own real estate agent in selling, trading or otherwise changing the ownership of any residential property:

(a) to make any representation in connection with the purchase, sale, or rental of any residential property, that there will or may be physical deterioration of dwellings in any block, neighborhood or area.

(b) to refer to race, color, religion or ethnic background in any advertisement offering or seeking residential property for purchase, sale or rental.

3. It shall be unlawful for any person, firm, partnership, association, or corporation, to knowingly aid, abet, or coerce the commission of any act made unlawful by subdivisions one, two and three of this section.

## SECTION V *Enforcement*

Upon information known to or complaint lodged with any officer or member of the DeKalb County Police Department or any clerk or deputy clerk of the Recorder's Court of DeKalb County that the informant or complainant has been contacted or solicited by any real estate broker, associate broker, salesman, or any person whomsoever in violation of

the provisions of this ordinance said officer or clerk shall forthwith issue and serve upon the person so accused, a summons to appear in the Recorder's Court at a date and time certain to stand trial for violation of this ordinance.

The officer or clerk issuing the summons to the accused shall also issue a subpoena to the informant or complainant to be and appear in the Recorder's Court at the same time to testify to the facts in behalf of the prosecution.

It shall be the duty of any DeKalb County Policeman, authorized planning official or special officer of DeKalb County appointed for that particular purpose to enforce this ordinance by the issuance of a summons to appear in Recorder's Court for the violation of this ordinance to the person who occupies the premises and to the person or persons whose names appear upon any solicitation sign found on any parcel of residential property in the unincorporated area of DeKalb County. Should the name of a corporation, trade name or partnership appear on said sign as the principal involved then said officer shall determine the principal officer of said corporation, partnership or other entity and issue to him the summons to appear in Recorder's Court.

## SECTION VI *Duty of Recorder upon Conviction*

Upon the conviction of any real estate broker, associate broker, salesman or other person licensed to do business by DeKalb County of any provision of this ordinance, the recorder shall transmit a certified copy of the complaint, an outline of the evidence produced including the names and addresses of all witnesses before him and a copy of his findings and punishment to the Chairman of the Board of Commissioners.

Upon receipt of the copy of the proceedings from the Recorder's Court the Chairman of the Board of Commissioners shall notify the person convicted in writing at least fifteen (15) days in advance by either personal service or service by certified or registered mail, return receipt requested, of the date upon which the Board of Commissioners will meet in public session to consider the revocation of his license to do business in DeKalb County. Said hearing may be continued from time to time by the Board acting within its discretion.

Upon said hearing the person convicted may make whatever defenses he may have and the Board may hear whatever witnesses it deems best, and upon consideration of the facts, including the judgment of conviction, may suspend the business license of the person accused for a period not in excess of six months or may revoke his business license entirely.

## SECTION VII *Effective Period*

This ordinance shall become effective at 12:00 midnight on November 14, 1972 and shall continue in effect until 12:00 midnight on November 14, 1973 at which time it is automatically rescinded unless it shall have been continued in force prior to midnight on November 14, 1973 by official act of the Board of Commissioners.

## SECTION VIII *Severability*

If any of the provisions of this title or of any portion thereof or the application of such provisions or portion to any person or circumstances shall be held invalid, the remainder of this title and its application to persons or circumstances other than those as to which it is held invalid shall not be affected thereby.

Approved this *30th* day of *October, 1972.*

Chairman, Board of Commissioners
of DeKalb County, Georgia

Attest:

*Cal M. Sandman*

Clerk, Board of Commissioners