THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* RALPH CHAPLIN and DANIEL G. CONWAY, Appellants.

Third Department, June 17, 1959.

*John F. Kelly* for appellants.

*John T. Casey, District Attorney,* for respondent.

REYNOLDS, J. Appeal by the defendants from a judgment of the County Court of Rensselaer County convicting them of the crime of conspiracy.

The defendants were indicted for conspiracy to commit the crime of robbery against the person of one William J. Tague. The defendants did not testify in their own behalf nor did they call any witnesses. The prosecution called, as witnesses, Tague, Alexander Karichkowski, at whose pawn shop Conway purchased an air pistol, and the police officers involved in the arrest of the defendants. The prosecution also introduced into evidence a statement made by the defendant Chaplin on the night of the arrest. When this statement was offered Chaplin did testify as to the circumstances of its taking. He stated he had been hit by a police officer and the officer denied this. The court below admitted the statement to be used only to determine the guilt of Chaplin, stating further that it was a question of fact for the jury as to whether it had been voluntarily made.

Tague testified that at about 11:40 on the night of December 17, 1957 the defendants entered the restaurant, of which he was the owner, had something to eat and at about 12:30 when people began to come in he heard Conway say, " Lets blow, its filling up, we will be back later." In the meantime he, Tague, had phoned the police. The defendants walked across the street and stood on the corner but when the police arrived they were not in sight. Tague got in his car and drove around the neighborhood for about 10 minutes and when he returned to his restaurant the defendants were again standing across the street. A police car then came by and the defendants were taken into custody. When asked what they were doing the defendants stated they were waiting for a bus. Upon searching the defendants an air pistol was found tucked in Conway's belt. Later at the police station Chaplin made a statement. The substance of this was that he and Conway had been drinking, that he accompanied Conway to a pawn shop where Conway purchased an air pistol, that Conway told him he was going to use it to stick up a man who ran a restaurant; he asked Chaplin if he would accompany him and Chaplin replied that he did not want to get in any trouble. Thereafter they went to Tague's restaurant and after they walked out Conway told him Tague was the man he was going to hold up. Conway said as soon as he comes out we will stick him up. When he came out there were two men with him so Conway decided not to stick him up and as they were walking away the police picked them up. Karichkowski testified that in December, 1957 Conway accompanied by a man whom he could not identify came into his pawn shop and bought

an air pistol. He could not identify it as the one taken off Conway but said it was the same kind.

The defendants contend on this appeal that conspiracy was not made out in that no agreement was shown, that prejudicial remarks by the District Attorney deprived them of a fair trial and that there was no corroboration of Chaplin's statement. The People maintain that all the essential elements of conspiracy were demonstrated, that the defendants had a fair trial and that there is ample evidence in the record to corroborate Chaplin's statement.

The appellants maintain that there is nothing outside of the statement by Chaplin which indicates that Conway was involved in a conspiracy. The statement made by Chaplin here was an admission of the kind referred to in *People* v. *Bretagna* (298 N. Y. 323, 326) as follows: " an extrajudicial admission by a defendant, not amounting to a confession because not directly acknowledging guilt, but including inculpatory acts from which a jury may or may not infer guilt, is circumstantial, not direct evidence."

The rule as to the admissibility of such admissions made by a conspirator has been often stated to be: " ' Declarations made by one conspirator in the prosecution of the enterprise are evidence against all, but they must be made in furtherance of the enterprise and while the enterprise is pending. Narration of past facts after the enterprise has come to an end by success or failure is not admissible in evidence against the others ' (*People* v. *Ryan,* 263 N. Y. 298, 305; see, also, *People* v. *McQuade,* 110 N. Y. 284, 307; *People* v. *Kief,* 126 N. Y. 661, 662–663; *People* v. *Vaccaro,* 288 N. Y. 170, 172)." (*People* v. *Marshall,* 306 N. Y. 223, 226.)

The court below here properly stated at the time the statement in question was admitted and again in its charge to the jury that it was to be used only to determine the guilt of Chaplin. This statement could not be used to determine the guilt of Conway who could only be convicted on the basis of the evidence in the record exclusive of Chaplin's statement.

Pursuant to section 580 of the Penal Law it is a misdemeanor for two or more persons to conspire to commit a crime. Under section 583 of the Penal Law an agreement to commit a crime does not amount to a conspiracy unless an overt act is done, with the exception of certain crimes. One of these exceptions is an agreement to commit a felony upon the person of another which, of course, the crime of robbery is, so that no overt act is necessary to prove the conspiracy charged herein. What had to be shown here was an agreement between Conway and Chaplin

to commit the crime of robbery. The appellants point to a sentence from *People* v. *Flack* (125 N. Y. 324) to the effect that an agreement to do an unlawful act is not a conspiracy unless the parties were activated by a criminal intent. They then argue that no real and corrupt agreement was shown here between Chaplin and Conway. It does not appear that it is necessary in every case of conspiracy to demonstrate that the conspirators were actually motivated by a corrupt and evil purpose. This is necessary when the unlawful act which is the aim of the conspiracy is only *malum prohibitum* as was stated in *People* v. *Harris* (294 N. Y. 424, 433): '' The gist of the crime of conspiracy as defined in this statute is agreement to do an unlawful act either as a means or as an end (*People* v. *Flack*, 125 N. Y. 324), and if the unlawful act is merely *malum prohibitum,* the agreement must have been entered into with criminal intent and evil purpose as distinguished from a purpose to do the act prohibited in ignorance of the prohibition (*People of the State of N. Y.* v. *Powell,* 63 N. Y. 88, cf. *Gardner* v. *People of the State of N. Y.,* 62 N. Y. 299).''

In *People* v. *Flack* (*supra*) the court said that in many cases the inference of the necessary criminal intent is irresistible. When the unlawful act is *malum in se,* as the act of robbery certainly is, the inference is open to the jury, and it would seem to be irresistible, from the mere agreement to do such an act that the defendant had the requisite criminal intent. The question here then is, was such an agreement made out. It is very seldom in a conspiracy, due to the nature of the crime, that there is direct evidence available to demonstrate that a conspiracy was entered into, and the agreement may be established by inference. As was stated in *People* v. *Flack* (*supra,* pp. 332–333) that: '' The agreement may be established by direct proof or by inference, as a deduction from conduct which discloses a common design on the part of persons charged to act together for the accomplishment of the unlawful purpose.''

The respondent cites *People* v. *Silverman* (252 App. Div. 149, 174) in which it was said: '' To prove the conspiracy, it is not necessary to show actual agreement of the actors. It suffices if facts are shown from which a common effort may be inferred.''

It would seem that in the case of Chaplin there was sufficient evidence from which the jury could infer that he had entered into an agreement with Conway to rob Tague. The case of *People* v. *Rivera* (281 App. Div. 911) is somewhat similar. There the defendants were seen near the home of the victim about an hour before he returned home from work. They left and returned at which time the victim and police were standing

near his home. The defendants drove by the house and when stopped by the police stated they had been hunting in the Catskills. The court said that: "The jury could find that such statements were false and that the only hunting which defendants had been doing was to find the intended victim. The jury could conclude from the false statements that the presence of the defendants at the time and place was not to make an innocent social or business call on a man they did not know. (Cf. *People* v. *Deitsch*, 237 N. Y. 300.) "

The defendants had made confessions and it was stated that these furnished the "key" to explain the facts and circumstances established by proof independent of the confessions. Here the statement of Chaplin was not a confession because it was not an admission of guilt but it would seem that the jury could infer from it that Chaplin had entered into an implied agreement with Conway to rob Tague. This in view of the fact that he admitted staying with him after he knew Conway intended to use the gun to rob a restaurant owner, went to a restaurant with him and remained with him after he was told who was to be robbed. This statement certainly furnishes the key to explain his actions in the restaurant and his waiting across the street thereafter.

The more difficult question here is whether there was sufficient evidence, exclusive of Chaplin's statement, from which the jury could find that Conway was involved in a conspiracy. The evidence here briefly was: Conway entered Tague's restaurant with Chaplin, they ordered food, when Tague went to use the phone Conway followed him to listen, when people began to come in they walked out after Conway said "Lets blow, its filling up, we will be back later", they went across the street where they disappeared for awhile but later were seen again and were picked up, they stated they were waiting for a bus and an air pistol resembling a real gun was found on Conway. The conspiracy, if made out, was done so solely by circumstantial evidence and in such cases the facts proven must exclude to a moral certainty every hypothesis except that of the crime charged and they must be inconsistent with innocence (*People* v. *Weiss*, 290 N. Y. 160, 163). It is argued here that the actions of Conway in the restaurant, his waiting across the street concealed for a time and the finding of the air pistol on him were sufficient to make out a conspiracy, particularly when explained by the statement which he was heard to have made while in the restaurant and from which the jury might infer that he and Chaplin were going to return to rob Tague. It might also be said that if the jury disbelieved his statement that he was wait-

ing for a bus, which it obviously did, that this made his presence there appear to be a guilty one (*People* v. *Deitsch*, 237 N. Y. 300). Taking these factors together it would seem that it could be argued that they point only to guilt and are inconsistent with innocence. However, in our view the evidence against Conway was insufficient, because the evidence is wholly circumstantial and is not inconsistent with innocence.

Having determined that the evidence was insufficient as to Conway it must then be determined if the conviction of Chaplin can stand. It was early stated in *People* v. *Hamilton* (165 App. Div. 546, 547) that: " A conspiracy involves of necessity the joint agreement of at least two parties. Holland cannot be guilty of this crime unless Hamilton also is guilty. It is necessary, therefore, to prove the guilt of both in order to sustain this indictment."

In *People* v. *Kuland* (266 N. Y. 1) it was held that where more than two are indicted for conspiracy the acquittal of one does not prevent the conviction against the others from standing. It was stated in that case (pp. 2–3) that: " The effect of an acquittal or of a reversal as to one or more but not all of the defendants tried upon a charge of conspiracy, is an old and much debated question. Upon an indictment against two only, where no others are named, the rule commonly stated is that an acquittal or reversal as to one is an acquittal or reversal as to the others."

Since a conspiracy does involve an agreement between two people to commit a crime the view that the acquittal of one means that the conviction of the other cannot stand is a sound one. Therefore since the evidence was insufficient as to Conway the conviction of Chaplin must also be reversed.

The judgments of conviction should be reversed and the indictments dismissed.

BERGAN, J. P., COON, GIBSON and HERLIHY, JJ., concur.

Judgments of conviction reversed, on the law and facts, and the indictments dismissed.