Peter Anthony SAIENNI, Jr., Defend-
ant below, Appellant,

v.

STATE of Delaware, Plaintiff below,
Appellee.

Supreme Court of Delaware.

Argued May 12, 1975.

Decided Sept. 11, 1975.

Arlen B. Mekler, Asst. Public Defender, Wilmington, for defendant below, appellant.

Raymond J. Otlowski, Deputy Atty. Gen. Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

Defendant appeals from jury convictions in the Superior Court for attempted murder, attempted kidnapping, conspiracy, and criminal solicitation. Eight grounds for reversal are argued and will be considered *seriatim*.

I

On October 13, 1973 defendant and the alleged victim were married. During the next five weeks a bizarre plan of "murder for hire" evolved leading to the convictions from which defendant appeals.

Three days after their marriage defendant insured his wife's life for $75,000. The policy provided for double indemnity in the event of accidental death and named defendant as primary beneficiary. At the time, defendant worked in Wilmington, lived alone in New Castle, Delaware, and visited his wife at her home near Marion Station, Maryland, one night during the week and on weekends.

A few days after issuance of the insurance policy, defendant visited Franklin Lloyd, a long time friend and convicted felon (also an active police informer but unknown as such by defendant). During the visit, Lloyd was asked by defendant if he was interested in making some money. He replied in the affirmative, but no details were discussed as to how the money was to be made until a later meeting took place in New Castle. At that meeting the plan was outlined and a diagram was drawn by defendant of the area in Maryland where the murder was to take place. The victim was to be a female (not then identified as defendant's wife); she was to be abducted from her home as she entered her automobile at a prearranged time; she was to be rendered unconscious and run over twice as she lay in the road some distance from her home (her automobile meanwhile to be wrecked); the murder was to take place within three or four weeks of the original meeting; Lloyd and his accomplice were to be paid $10,000. The reason given for the crimes was that defendant's gang had a contract to kill this unidentified female.

It was not until after a trip to Maryland, where defendant pointed out the entire physical layout and discussed step by step how the murder was to be accomplished, that Lloyd realized defendant was serious. Without further delay he relayed this information to the Delaware State Police who instructed him to continue collecting information and to introduce an undercover police agent to defendant as a likely accomplice. Lloyd followed instructions, and Trooper English of the Maryland State Police, wired with a recorder, became Lloyd's supposed accomplice and defendant's confidant. Defendant, Lloyd, and English, at meetings in Delaware and Maryland, discussed and rehearsed the murder in great detail. Finally, on schedule, following pre-arranged signals given by the would-be abductors to defendant, the victim-to-be walked from her home into the arms of Trooper English and her brother, who had been substituted for Lloyd. Defendant was arrested, one of the cars to which he had access to in his work was searched at the scene, and simultaneously his apartment in New Castle was searched by officers of the Delaware State Police.

**154**

## II

■ Defendant argues that he cannot be guilty of conspiracy with an established police informer and an undercover. agent who had no intention of committing the crime. We find no merit to this argument, which is controlled by 11 Del.C. § 523(2):

"It is no defense to a prosecution for criminal conspiracy that, because of irresponsibility or other legal incapacity or exemption, or because of unawareness of the criminal nature of the agreement or the conduct contemplated or of the defendant's criminal purpose, or because of' other factors precluding the mental state required for commission of the conspiracy or the crime contemplated, one or more of the defendant's co-conspirators could not be guilty of the conspiracy of the crime contemplated."

The commentary on § 523 is enlightening:

"Section 523 takes what the Model Penal Code commentary calls a "unilteral approach." That is, attention is focused on each individual's culpability. He has no defense which rests solely on another party's incapacity, irresponsibility, or obedience to law. Thus if he solicits a person to commit an offense, his crime is complete at that point, and it is irrelevant to his own liability that the person solicited does not commit the offense or could not be found guilty of committing the offense because of some legal incapacity or irresponsibility, or because he did not know that the conduct solicited was criminal."

See the Commentary to the *Model Penal Code* #5.04 (Tent. Draft No. 10, 1960), and *Wilson v. State,* Del.Supr., 305 A.2d 312 (1973).

## III

■ Defendant argues that mere preparation and impossibility of success defeat the charges of attempted murder and kidnapping.

This argument is without merit and is controlled by 11 Del.C. § 531:

"A person is guilty of an attempt to commit a crime if he:

(1) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

(2) Intentionally does or omits to do anything which, under the circumstances as he believes them to be, is a substantial step in a course of conduct planned to culminate in his commission of the crime."

The record clearly shows that defendant intended, to commit the crimes charged and that he did all he planned to do up to the very moment of execution of his plan; he procured insurance, drew a diagram of the area where he wanted the crime committed, made contract to kill, gave detailed instructions and directed rehearsals, and started sequence of events which occurred as scheduled.

## IV

■ Defendant argues that his activities in Maryland should not have been used against him in Delaware.

11 Del.C. § 204 provides in its pertinent part as follows:

(1) Except as otherwise provided in this section a person may be convicted under the law of Delaware of an offense committed by his own conduct or by the conduct of another for which he is legally accountable if:

(a) Either the conduct or the result which is an element of the offense occurs within Delaware; or

(b) Conduct occurring outside the State is sufficient under Delaware law

to constitute a conspiracy to commit an offense within the State and an overt act in furtherance of the conspiracy occurs within the State; or

(c) Conduct occurring within the State establishes complicity in the commission of, or an attempt, solicitation, or conspiracy to commit, an offense in another jurisdiction which also is an offense under the law of Delaware;

The commentary to § 204 is noteworthy:

"This section makes the Criminal Code applicable to criminal conduct and results which occur in Delaware, to conspiracies conceived outside the State but evidenced by an overt act within the State, to conduct within the State leading to an offense in another jurisdiction which is also an offense in Delaware, to a criminal omission to perform an act required by Delaware law and to any out-of-state conduct which is expressly made criminal as such by Delaware law, provided that law is within the legislative jurisdiction of Delaware."

Defendant argues that the statute is "overbroad" but cites no legal authority. The argument is without merit.

## V

Defendant argues that evidence seized from his residence in Delaware should have been excluded because it was the product of a defective search warrant.

The record shows that a defective warrant was issued but that no search was made pursuant to it. A new warrant was obtained on which no attack was made. Accordingly, nothing has been shown to invalidate seizures made pursuant to the second and valid warrant.

## VI

Defendant argues that his Fourth Amendment rights were violated by a warrantless search of his automobile which produced the insurance policies offered into evidence to establish motive.

■■ As a general rule a warrantless search is unreasonable and violative of the Fourth Amendment. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). It is arguable, therefore, that the search of the car was invalid, but our examination of the record persuades us that exigent circumstances justified what was done. The record is clear that defendant had represented himself as a member of an organization or gang which killed for hire, that there was a contract to kill the alleged victim, that others were involved in the pay-off, and that defendant had access to other automobiles in which incriminating evidence might be located, i. e. insurance policy and diagram of scene. These facts are sufficient to sustain the exigency of the circumstances test. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *People v. White,* 392 Mich. 404, 221 N.W.2d 357 (1974); *England v. State,* 274 Md. 264, 334 A.2d 98 (1975).

## VII

■ Defendant argues that his right to due process and equal protection of the law under the Fourteenth Amendment and his right to trial by jury under the Sixth Amendment were violated by 11 Del.C. § 432(2) which denies him the defense of entrapment.

11 Del.C. § 432 provides as follows:

"(1) In any prosecution for an offense, it is an affirmative defense that the accused engaged in the proscribed conduct because he was induced or encouraged to do so by a law enforcement officer or by a person acting in cooperation with a law enforcement officer, seeking to obtain evidence against him for the purpose of criminal prosecution, when the

**156**

methods used were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

(2) The defense afforded by subsection (1) of this Section is unavailable when causing or threatening physical injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment."

No legal authority is cited by defendant supporting his argument that as a matter of law he is entitled to an entrapment defense and we find it to be without merit. *United States ex rel. Crosby v. State of Delaware,* 346 F.Supp. 213 (D.C.Del.1972); *Granville v. State,* Del.Supr., 287 A.2d 652 (1972).

VIII

Defendant argues that his right to a fair trial was violated by the delay in not arresting him until four weeks after the police were first informed of the plot. The delay was the result of police investigative action to obtain substantiating evidence upon which to base a prosecution. Defendant contends this delay exposed him to harsher penalties and loss of his right to raise the defense of entrapment. Neither of these contentions has merit. The defense of entrapment was unavailable to him at all times under 11 Del.C. § 432(2). He cites *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) in support of his argument that he sustained actual prejudice by the delay. However, the record is devoid of those key factors under *Marion,* supra, necessary to show actual and substantial prejudice to a fair trial, i. e. dimmed memories, inaccessability of witnesses, lost evidence, or that the state intentionally delayed to gain tactical

advantage. *Preston v. State,* Del.Supr., 338 A.2d 562 (1975). And there is no constitutional right to be arrested.

Affirmed.