OPINION OF THE COURT
Joel J. Tyler, J.
If A plots with B to commit a crime and A performs one or more overt acts in furtherance of the criminal plan, but B, unbeknown to A, has no intent to carry out the plan because he is an informant, working with the police to secure supporting evidence against A, can A be effectively charged with and convicted of criminal conspiracy?
That tantalizing and intriguing issue is presented by defendant’s motion to dismiss the indictment, charging two counts of criminal conspiracy. No question of entrapment has been raised, nor is it evident. Nor are we dealing here with a situation where the informant has committed all or some of the overt acts. That may present problems unconnected with the implications presented by the circumstances here.[1] Our concern is addressed to the situation where none of the overt acts are alleged to have been performed by the informant but rather all are attributable to defendant, as reflected in the Grand Jury minutes.
Those minutes clearly indicate that the person with whom the defendant was allegedly conspiring was then acting as a police agent, apparently only feigning agreement with defend *6 ant, never intending to execute or aid in executing the object crime, but merely intending to secure supporting incriminating evidence against defendant, in part, by surreptitiously recording his conversations on a recording device attached to his person.
The issue hereinabove posed has yet to be resolved by appellate decision in this State since the enactment of the new Penal Law in 1965 (eff Sept. 1, 1967), although there exists highly respectable opinion on both sides of the issue. However, I suggest that discernible legislative intent militates to the compelling conclusion that the indictment is maintainable and that conviction of the defendant will not fail merely because his sole alleged coconspirator never intended, from the outset, to conspire, or to commit or assist in the commission of the object crime.
"The life of the law has not been logic: it has been experience” (Holmes, The Common Law, p 1). Similarly, the law of conspiracy, as with legal principles generally, has developed, step by step, not necessarily in logical progression but essentially to meet alleged social necessity. Conspiracy originated in a series of statutes enacted during the time of England’s Edward I in the 14th Century which were designed to remedy specific abuses, not crimes themselves, such as forming combinations to procure false indictments or maintain vexatious lawsuits. Conspiracy was later extended, by purely judicial fiat, to cover combinations whose purpose was the commission of crime. At one time, combinations to effect noncriminal ends by noncriminal means had been held indictable, with or without an overt act, so long as the means or the ends were corrupt, dishonest, fraudulent or immoral. The mere combination was said to add criminality or illegality to an act otherwise free from them (35 Harv L Rev 393, 396-408).[2]
Our old Penal Law (§ 580) declared it a misdemeanor "[i]f two or more persons conspire” to perform certain specified acts, and it was a felony under section 580-a "[i]f two or more persons conspire” to commit certain named felonies. Because of the nature and combination of the words used — "two or more persons conspire” — it was legislatively envisaged and contemplated that a vital operational concomitant of this *7 crime was a bilateral or multilateral criminal agreement with the requisite mens rea present for each member of the agreement. "It is impossible in the nature of things”, noted Justice Cardozo in 1933, "for a man to conspire with himself * * * conspiracy imports a corrupt agreement between not less than two with guilty knowledge on the part of each.” (Morrison v California, 291 US 82, 92; also United States v Williams, 341 US 70, 86; Direct Sales Co. v United States, 319 US 703, 711; Sears v United States, 343 F2d 139; 72 Harv L Rev 920, 926; Prim, The Mens Rea Requirement for Conspiracy: The Model Penal Code and the Progressive Law of Judge Learned Hand, 40 Mo L Rev 467, 471; 16 Am Jur 2d, Conspiracy, § 9, pp 132-133.)
And so, in a similar vein, our courts have historically and consistently followed suit (People v Flack, 125 NY 324, 332; People v Hamilton, 165 App Div 546, 547; People v Mackell, 47 AD2d 209, 213, affd on other grounds 40 NY2d 59).[3] They further maintained, correlatively, that "Upon an indictment against two only, where no others are named, the rule commonly stated is that an acquittal or reversal as to one is an acquittal or reversal as to the other” (People v Kuland, 266 NY 1, 2-3; also People v Scheppa, 295 NY 359, 361; People v Bauer, 32 AD2d 463, 466-467, affd on other grounds 26 NY2d 915; People v Chaplin, 8 AD2d 286, 291). These holdings were consonant with those elsewhere. (Nigro v United States, 117 F2d 624; United States v Fox, 130 F2d 56, cert den 317 US 666; 91 ALR2d 700 et seq.)
The rationale of public policy, decreeing as punishable conspiratorial arrangements, was predicated upon the fear that group action is often more dangerous than individual endeavors at crime. It was believed that there is a greater likelihood of accomplishing the crime if more than one set their mind to it (United States v Rabinowich, 238 US 78, 88; Callanan v United States, 364 US 587, 593-594). To combat the danger of group action, society permitted official intervention any time after an agreement had been formed, accompanied by an overt act, and before culmination of the agreement in *8 the commission of the object crime. Essentially then, social policy thus sought that crime prevention be served by such intervention.
If the ultimate goal is essentially crime prevention, then should not the danger to society be measured by the individual criminal disposition, rather than by reference to the effect or result such would-be criminal may have after others are recruited by or voluntarily join him in a criminal combine? Additionally, the perceived danger is that, if the efforts of the criminally intentioned to conspire with others are not aborted and the conspirator is not isolated, the guilty will continue to find solace in the law’s inability to appropriately deal with him. There is sure logic in the view that the law should "focus inquiry on the culpability of the actor whose liability is in issue, rather than the group of which he is alleged to be a part.” (Wechsler, Jones and Korn, Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy, 61 Col L Rev 957, 963.)
Experience has demonstrated that when conviction of any one defendant in conspiracy prosecutions requires a mutual agreement and a common intent by two or more, societal goals of crime prevention have been and would continue to be frustrated in many cases. Logic and experience dictate a new approach and old "rules, however well established, must be revised when they are found after fair trial to be inconsistent in their workings with an attainment of the ends which law is meant to serve.” (Cardozo, The Growth of the Law, p 120.) The task of revision and readaptation should not be shirked through timidity, when a present social need or a desired end justifies change. The conspiracy provisions of our present Penal Law offer that necessary new approach and change and are appropriately directed at individual culpability. They meet the defect inherent in the old that would permit a guilty conspirator to go unpunished merely because his intended partner did not possess the requisite mens rea.[4]
Our present Penal Law, which represents a sweeping revision of the Penal Code of 1881, is substantially footed upon the American Law Institute’s Model Penal Code, and that is particularly true of the provisions relating to conspiracy.[5]
*9 The Model Penal Code (hereinafter referred to as MPC) in defining conspiracy (§ 5.03, subd [1]), provides that "A person is guilty of conspiracy with another person or persons to commit a crime if * * * he agrees with such other person or persons”. Our Penal Law (§§ 105.00-105.15) speaks in substantially similar terms when it condemns "A person * * * when * * * he agrees with one or more persons”. It is apparent that the revisions have been carefully reworded in both instances so as to focus upon the behavior of a single malefactor rather than upon the collaboration of several wrongdoers. The purpose of the prohibition then is to nip in the bud contemplated criminal activity before culmination, by directing prosecutorial attention to individual criminal disposition. This modern formulation, known as the "unilateral approach”, has been adopted by the majority of States in the revision of their penal laws (75 Col L Rev 1122, 1135).[6]
In this connection, it is of interest to examine the most recent statutory revisions of some of our sister States, all of which have effectively defined conspiracy in unilateral terms, in a manner similar to our own conspiracy provisions (Penal Law, § 105.00 through § 105.15), and those of the MPC. For example, Hawaii, whose relevant Penal Code provisions were adopted in 1972, effective January 1, 1973 (Hawaii Penal Code, ch 705, § 705-520), explains, in its "Commentary” under the definition of "Criminal Conspiracy”, that: "Unlike the prior definition based on the concurrence of 'two or more persons,’ the Code focuses on a given defendant and states what conduct on his part is sufficient to establish his liability for criminal conspiracy. Group liability is not necessary. The actor’s agreement does not require a 'meeting of the minds’ with one or more other persons; the Code does not require that at least two persons be guilty of a criminal conspiracy. The 'agreement’ on the part of a 'co-conspirator’ might be feigned; but this has no bearing on the defendant’s individual liability * * * Furthermore, under the unilateral approach of § 705-520, the failure to prosecute * * * or the prior acquittal of a co-conspirator would not affect the defendant’s liability.”[7]
*10 Among the most recent formulations, Indiana (Stats Ann, tit 35, § 35.41-5-2, eff Oct. 1, 1977), Kentucky (Rev Stats, § 506.040, eff Jan. 1, 1975), Missouri (Ann Stats, § 564.016, eff Jan. 1, 1979), Washington (Rev Code of Wash Ann, tit 9A, § 9A.28.040, eff July 1, 1976), and Maine (Rev Stat Ann, tit 17-A, § 151, subds 1, 7, eff May 1, 1976) have also adopted the unilateral, and have forsaken the bilateral or multilateral, approach.[8]
Professors Wechsler, Jones and Korn of Columbia Law School were intimately and extensively involved in the drafting of the MPC. In their extraordinary and elaborate two-part article in the Columbia Law Review (61 Col L Rev 571, 957), which Justice Nathan R. Sobel correctly characterizes as "the standard work on the subject of anticipatory or inchoate crimes” (32 Brooklyn L Rev 257, 260), they set forth among other matters, the rationale for and explain the meaning and application of the unilateral approach as found in the MPC. Since, as hereinabove indicated, our conspiracy statutes are substantially predicated upon and follow that approach (although in somewhat different language), it behooves us to note what these experts say, in part:
"One consequence of this [unilateral] approach is to make immaterial to the guilt of a conspirator whose culpability has been established that the person or all of the persons with whom he conspired have not been or cannot be convicted.
* * *
"When the person with whom the defendant conspired secretly intends not to go through with the plan, it is generally held that neither party can be convicted because there was no 'agreement’ between two persons. Under the unilateral approach * * * the culpable party’s guilt would not be affected by the fact that the other party’s agreement was feigned. He has conspired, within the meaning of the definition, in the belief that the other party was with him; apart from the issue of entrapment often presented in such cases, his culpability is not decreased by the other’s secret intention. True, the project’s chances of success have not been increased *11 by the agreement; indeed, its doom may have been sealed by this turn of events. But the major basis of conspiratorial liability, the unequivocal evidence of a firm purpose to commit a crime, remains the same.” (61 Col L Rev 965-966.)
Further, they note (p 967) that under the unilateral approach the acquittal of one coconspirator will not militate for the dismissal of the conspiracy charge against the other. There would be no inconsistent verdict, since the guilt of any one conspirator is made independent of that of his coconspirator(s). These experts recognize that such disparate outcomes give rise to criticism and objection, but they note that such result is preferable to the discharge of an offender whose own guilt was clearly established.
The debate continues. Many, as aforesaid, insist that there can be no conspiracy without agreement between two or more with the prerequisite mens rea for each.[9] They are reluctant to acknowledge the viability and logic of the unilateral approach, which the Superior Court of New Jersey denominates "the modern view” (State v Lavary, 152 NJ Super 413, 428). Also, respected authorities in our State maintain that position, notwithstanding the apparent dictates of our conspiracy statutes, which intend the application of the unilateral approach (People v Teeter, 86 Mise 2d 532; People v Hanley, 92 Misc 2d 465; People v Schwimmer, NYLJ, March 27, 1978, p 13, col 2; People v Di Dominick, 94 Mise 2d 392; Marks and Paperno, Criminal Law in New York under the Revised Penal Law, § 66, pp 100-101; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, art 105, p 299; Sobel, 32 Brooklyn L Rev 257, 264). I respectfully register dissent from all of them, as hereinafter explained.
Defendant cites three Federal cases in support of his contention that "there can be no conspiracy with a government informant who secretly intends to frustrate the conspiracy.” Of course, since Morrison v California (291 US 82, supra), the cases in the Federal area are legion in requiring a corrupt agreement between at least two persons with the requisite *12 mens rea on the part of each to sustain a conspiracy indictment, and that an acquittal of one of two coconspirators mandates the dismissal of charges against the other.[10] But the Federal experience is not relevant to a discussion of New York requirements, since the present, generic Federal conspiracy statute is couched in bilateral or multilateral terms when it prohibits "two or more persons” to conspire to commit any offense against the United States (US Code, tit 18, § 371), as distinguished from the New York conspiracy laws, which stress individual guilt and direct the prohibition to "a person”, as aforesaid (Penal Law, §§ 105.00-105.15).[11]
It is implicit in the very nature of the formulation of the unilateral approach, that the coconspirator’s legal status is immaterial to the defendant’s criminal liability (61 Col L Rev 957,966; State v St. Christopher, 305 Minn 226,233-235). Nevertheless, the MPC (§ 5.04, subd [1]) and a number of States, including New York, which use the unilateral definition of conspiracy have included a provision which emphasizes, in seeming repetition, that the guilt of one conspirator is independent of that of his coconspirator and that a defendant may not use as a defense the reality that owing to the absence of "the mental state required for the commission of conspiracy or the object crime” any one or more of his coconspirators could not be guilty of conspiracy or the object crime (Penal Law, § 105.30). Although such added provision may appear superfluous in light of the aforesaid meanings implicit in the unilateral formulation, it does add clarity to the legislative intent (75 Col L Rev 1122, 1138).
The experience of other States is enlightening and suggests *13 the resolution of our situation. In State v St. Christopher (supra), one Zobel was urged by defendant to aid him to kill his mother. Zobel testified that he never intended to participate in the murder but merely feigned agreement. Two days after the initial discussion with defendant, Zobel visited the police, revealed defendant’s plan and was urged by the police to co-operate with defendant. The plan was aborted by the police relatively close to its realization with defendant’s arrest. After conviction of conspiracy and another charge, defendant argued, on appeal, that there could be no conspiracy conviction since Zobel never intended either to agree to the nefarious plan or to aid in its fulfillment. The court rejected the argument. It pointed out (p 231) that had Minnesota retained its old conspiracy law, which was formulated under the bilateral and multilateral approach, it would have had to reverse the conviction. However, under its existing law, it noted (p 235) that its language effectively speaks of the unilateral approach and thus, "[bjecause of this wording” the conviction could not be disturbed.
Minnesota statutes do not include a no defense provision such as section 105.30 of our Penal Law, but, nevertheless, the language of their conspiracy law, as ours, is sufficient, in and of itself, to support such conviction.[12]
The State of Delaware has also adopted the unilateral approach for its conspiracy law, but additionally includes a provision quite similar to section 105.30 of our Penal Law, in that it provides that it is no defense to a prosecution for criminal conspiracy that "because of other factors precluding the mental state required for commission of the conspiracy or the crime contemplated, one or more of the defendant’s co-conspirators could not be guilty of the conspiracy or the crime contemplated.” (Del Code, tit 11, § 523, subd [b].)
In 1975 that provision was in issue on appeal before Delaware’s Supreme Court in Saienni v State (346 A2d 152), under facts markedly similar to those in St. Christopher (305 Minn 226, supra), and accompanied by similar defense arguments. Delaware followed Minnesota and for the same reasons.
Our neighbor, New Jersey, was presented with the same problem for the first time last year, 1977, in State v Lavary *14 (152 NJ Super 413, supra).[13] And here too, the coconspirator, Billie, immediately hastened to the police with her story of defendant’s plan to have a troublesome police officer beaten. Billie feigned agreement and seemingly co-operated with defendant, but, in fact, co-operated with the police in securing damaging evidence against the defendant. Here too, the same defense arguments were raised as in St. Christopher and Saienni (supra), with the same result and for the same reasons, and the court cogently remarked (p 430) that section 105.30 of our Penal Law similarly supports the modern, unilaterial view.
It further suggested that one consequence of the unilateral approach to criminal conspiracy is to make it immaterial to the guilt of a conspirator, whose culpability has been established, that the person or all of the persons with whom he conspired have not been or cannot be convicted. The court concluded, significantly, as follows (p 434): "To hold otherwise here would mock justice, interfere with the interests of society in repressing crime, and lead to absurd results. This court finds * * * that a unilateral approach to the crime of conspiracy is appropriate and fully justified * * * This approach requires that the evaluation of guilt * * * when conspiracy is charged be from the point of view of the individual actor. This court finds this interpretation * * * not violative of any legislative directive and consistent with the increased danger and social harm inherent in the crime of conspiracy. The 'intricacies and artificial distinction’ urged by defendant, thwart, rather than serve substantial justice and are hereby rejected.”
Although Minnesota and Delaware at least, bask in the confident knowledge that their highest appellate courts have determined that the unilateral approach is applicable there in criminal conspiracy prosecutions, New York’s appellate courts *15 have yet to clearly and directly address themselves to this question or, specifically, to the meaning and effect of section 105.30 of the Penal Law. However, some lesser courts and commentators have done so.
For example, Mr. Justice Sobel, discussing the inchoate crimes of our then new Penal Law, confirms that the new definition of conspiracy adopts the "unilateral approach” and that "A consequence of the true unilateral approach is to make immaterial the conviction of other conspirators.” However, he continues, that "[w]e may * * * assume that the existing rule remains in effect — there must be a conviction of at least two conspirators” because the Revision Commission Report did not connect the conspiracy article with the unilateral approach in its discussion of the major changes of that article.[14] However, he hedges that assumption and appears perplexed by the "no defense” provision of section 105.30 of the Penal Law, which appears inconsistent with his assumption. He concludes that, absent legislative intent, it is idle to speculate whether or not section 105.30 would permit conviction of one of two conspirators and acquittal of the other because the latter lacked criminal intent (32 Brooklyn L Rev 257, 264-265). I suggest that there is no need for speculation or strained conclusions. The legislative intent is apparent; our definition of conspiracy (Penal Law, §§ 105.00-105.15) together with section 105.30 of the Penal Law necessarily militates to the conclusion that we have adopted the principles of the unilateral approach and its concomitant ramifications, which would permit of the conviction of one of two conspirators and the acquittal of the other who lacks mens rea.
Nor do we gain any greater guidance from Marks and Paperno (Criminal Law in New York under the Revised Penal Law, § 66, pp 100-101), since they give no reason for their bold conclusion that section 105.30 of the Penal Law "does not seem to indicate any change in the rules as previously developed”.
Regrettably, we find no finer explanation from Arnold D. Hechtman in his Practice Commentaries (McKinney’s Cons Laws of NY, Book 39, Penal Law, art 105, pp 298-299), when he merely declares that conspiracy is defined in our present Penal Law in terms of an agreement to cause the performance of criminal conduct "with a prescribed mens rea required for each defendant”.
*16 People v Cardosanto (84 Misc 2d 275) appears first to declare that although police officers there feigned agreement with defendant, the conspiracy indictment is, nevertheless, viable in light of section 105.30, which precludes the asserted defense that there can be no conspiracy absent the requisite mens rea in each of two or more persons. Unfortunately, the court’s decision does not develop its conclusion beyond noting the applicability of section 105.30.
People v Teeter (86 Misc 2d 532, supra) was next to consider the issue, presented only collaterally to the primary issue as to whether certain payments to undercover police officers constituted overt acts.[15] In discussing such collateral issue, the court addressed itself to the defendant’s contention that since the officers lacked intent to conspire there could be no conspiracy with the defendants and also to the People’s response that, despite the lack of intent, the officers, by virtue of section 105.30, were to be deemed coconspirators. In dealing with these arguments the court rejected Cardosanto, suggesting that section 105.30 is limited only to a case where the coconspirator’s mental incapacity or unawareness precludes formation of a criminal intent and excludes its application to cases where the coconspirator pólice officer has feigned agreement, as in Cardosanto. In such latter case, Teeter implies that the appellation "conspirator” is a misnomer. That court further suggests that the term (§ 105.30), "other factors precluding the mental state”, etc., has no meaning beyond referring back to, explicating and emphasizing the suggested limitations of section 105.30.[16] I respectfully disagree. Section 105.30 of the Penal Law is not so limited, nor is there, expressed or implied a legislative intent to so limit it. The very nature and meaning of the unilateral approach, which *17 shrouds our conspiracy laws, rejects such limitation. On the contrary, the quoted term extends section 105.30 to cover any situation, beyond and in addition to mental incapacity or unawareness, where any person, including a police officer or agents, and for any reason (i.e., "other factors”) did not possess the requisite culpable predisposition and guilty mind to either join in the criminal combine or effectuate the substantive crime.
People v Hanley (92 Misc 2d 465, supra) and People v Schwimmer (NYLJ, March 27, 1978, p 13, col 2, supra) adopted the Teeter reasoning and dismissed the conspiracy count upon an examination of the Grand Jury minutes. In People v Di Dominick (94 Misc 2d 392, supra), the court mentions, but does not deal with, section 105.30 and People v Cardosanto (84 Misc 2d 275, supra), but agrees with the others that conspiracy requires the agreement of two or more persons with a common intent to commit the object crime. However, to save the conspiracy count (an undercover police officer "agreed” with defendant), the court held that an attempt to conspire is a lesser included count to conspiracy and the conspiracy count was maintainable on that ground. The result begs our question.
Since the advent of our present Penal Law, it would appear that habit, not necessarily logic, has fashioned an unremitting dogma in its insistence that change in our law has brought no change. It has bound down a functionally appropriate approach, as it deals with individual dispositions to criminality, in the iron grip of outdated precedents and, at times, ill-traced legal genealogies. It has restrained our acceptance of the modern unilateral aspect of conspiracy as directed and defined in sections 105.00-105.15 of the Penal Law and further affirmed by section 105.30, which provisions are supportive of social interests and address individual criminal responsibility.
Given the rationale of the unilateral approach and the clear implications of our conspiracy laws as supportive of that approach, which I adopt here, I am constrained to deny the defense motion to dismiss the indictment.

. If all of the overt acts are committed by a police agent it is clear under the holding of this decision that the indictment must fall. (De Mayo v United States, 32 F2d 472.)

. Prior to 1967, section 580 of the Penal Law used conspiracy to proscribe agreements that were not necessarily criminal if pursued by an individual; thus acts "injurious to public health” or "public morals” or "for the perversion or obstruction of justice, or of the due administration of the laws” were prohibited.

. People v Mackell (47 AD2d 209, 213, supra) cites for support People v Chaplin (8 AD2d 286), decided under the old Penal Law (§ 580), which we hold has no relevance to the issue here presented. Mackell repeats the old rule that conspiracy requires an agreement "with a common corrupt intent in the minds of at least two or more persons”. It does not further discuss the rule nor the major distinctions between the conspiracy provision in the new Penal Law (§§ 105.00-105.15) and the old (§ 580); those distinctions are the thrust of this decision.

. The rationale of article 20 of the Penal Law (liability through accessorial conduct) and particularly section 20.05 and our Penal Law, generally, is predicated upon individual culpability. (Also People v McKane, 143 NY 455, 464.)

. The Foreword to the 1964 Report of the New York State Commission on Revision *9 of the Penal Law and Criminal Code acknowledges the commission’s debt to the "invaluable source of stimulation and guidance” afforded by the American Law Institute Model Penal Code (p VI). (See, also, 75 Col L Rev 1122,1135.)

. Minnesota (Stats Ann, part 5, § 609.175), Illinois (Ann Stats, ch 38, § 8-2), and Wisconsin (Stats Ann, § 919.31), which our revision commission stated it also used for guidance, have long adopted the "unilateral” approach.

. There appears a similar explanation under the commentary to the conspiracy *10 provision in Arkansas (Stats, tit 41, § 41-707, eff Jan. 1, 1976); Texas Penal Code (Vernon’s Codes Ann, § 15.02); and South Dakota (Codified Laws Ann Rev, tit 22, § 22-3-8, eff Oct. 1,1977).

. However, Iowa, although it revised its conspiracy statute recently (Iowa Code Ann, ch 706, § 706.1, eff Jan. 1, 1978), opts to continue "agreement * * * between two or more persons” — the old bilateral and multilateral approach.

. See cases cited herein. (Also 1 Wharton’s Criminal Law and Procedure, § 83, p 180; Orchard, "Agreement” in Criminal Conspiracy, Grim L Rev, May, 1974, pp 297, 298; Perkins, Criminal Law, p 636; Marcus, Conspiracy: The Criminal Agreement In Theory and In Practice, 65 Geo LJ 925, 957-962.) However, see Fridman, Mens Rea in Conspiracy (19 Mod L Rev 276, 283), and Williams, Criminal Law, The General Part ([2d ed], pp 672-673), who insist that there is no reason in policy or logic why conspiracy must require a mens rea present in at least two persons.

. Such Federal consistency has not gone without criticism. The rules so Federally established have been said to be "founded upon a false premise”, in that a mandated dismissal of one conspirator after the acquittal of the other, "is not necessarily a declaration of innocence by the jury [of the acquitted defendant], but simply an indication of lack of proof of guilt beyond a reasonable doubt.” (United States v Fox, 130 F2d 56, 58.)

. Interestingly, the proposed Federal Criminal Code Reform Act of 1977, which passed the Senate as S1437 on January 30, 1978, and now resides for consideration in the House’s Judiciary Committee, seems to be couched under the unilateral approach (§ 1002, subd [a]). But yet the report of the Senate’s Judiciary Committee, dated November 15, 1977 (Report No. 95-605, par 1, p 163), envisions no change in meaning of the terms "conspiracy” and "agreement” from that already previously established by heretofore "well established case law”, which is founded upon the existing bilateral or multilateral approach. The proposed reform of the Federal Criminal Code also markedly changes the circumstances under which the defense of acquittal of coconspirators can be utilized (§ 1002, subds [c], [d]).

. The New York Temporary Commission on Revision of the Penal Law, etc. stated that it used Minnesota’s conspiracy provisions, among others, as a guide in drafting our conspiracy law. (See n 6, supra.)

. The Law Division (Criminal) of the Superior Court of New Jersey where State v Lavary (152 NJ Super 413, supra) was decided is not an appellate court but appears to be comparable to our Supreme Court. Of interest is the fact that New Jersey’s proposed revised Penal Law, which contains criminal conspiracy provisions adopting the unilateral approach, has not yet been adopted. New Jersey Senate Bill No. 738, which introduced on January 26, 1978 a New Jersey Code of Criminal Justice, has been passed by the Senate and is being considered by the State Assembly. (See §§ 2C:5-2, 2C:5-3; also NJ Penal Code, vol II, Commentary, Final Report of the NJ Criminal Law Revision Commission, Oct., 1971, pp 131, 145.) In contrast, New Jersey’s present law is couched in terms of the bilateral approach. (NJS 2A: 98-1.) Nevertheless, in light of precedents, which it discusses, the court interprets and gives meaning to the existing definition of conspiracy in terms of the unilateral approach.

. n 5.

. People v Teeter was appealed and affirmed by a divided court (62 AD2d 1158). However, the issue on appeal did not concern itself with the collateral matter discussed by the court below, relative to whether or not the police officers’ lack of intent precluded the formation of a conspiracy in spite of the fact that the defendants were alleged to have been coconspirators. The Appellate Division restricted its discussion and holding to the primary issue raised below. Leave to appeal to the Court of Appeals has been granted (44 NY2d 860) and the case is pending there.

. Teeter (supra) further suggests that were we to consider the police officer a "conspirator” for the purpose of enforcing our conspiracy law, we would, in effect, be holding the defendant culpable for acts constituting the crime of criminal solicitation while at the same time exposing the defendant to the higher penalties imposed for the commission of criminal conspiracy. Such view loses sight of the difference in the elements of the two crimes and, particularly, the role played by the overt act in conspiracy prosecutions.