972 F.2d 344
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Lovina YOUNG, Defendant-Appellant.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Robert COLON, Defendant-Appellant.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Olga COLON, Defendant-Appellant.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Bernard DUPLESSIS, Defendant-Appellant.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Luis ENSUNCHO, Defendant-Appellant.
 Nos. 91-5078, 91-5097, 91-5098, 91-5099, 91-5100.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 4, 1992
Submitted: May 4, 1992
Decided: August 24, 1992
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-91-51-A)
 ARGUED: James Clyde Clark, Land, Clark, Carroll & Mendelson, P.C., Alexandria, Virginia, for Appellant Young; Christina Monroe Smith, Alexandria, Virginia, for Appellant Olga Colon; Mark Thomas Crossland, Woodbridge, Virginia, for Appellant Duplessis; Barbara Sue Carter, Gardner & Carter, Fairfax, Virginia, for Appellant Robert Colon.
 John Patrick Rowley, III, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 ON BRIEF: Shawn Franklin Moore, Roberts & Moore, Washington, D.C., for Appellant Ensuncho.
 Richard Cullen, United States Attorney, Christopher Supple, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 Dismissed in part, Affirmed in part, and Vacated and Remanded in part.
 Before RUSSELL and LUTTIG, Circuit Judges, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants in this case were convicted for their roles in a cocaine distribution conspiracy. They raise numerous issues on appeal challenging their convictions and sentences. Appellant Robert Colon died of AIDS while this case was pending on appeal. Therefore, we dismiss Colon's appeal as moot. We find, with one exception, that the other claims raised on appeal have no merit, and we affirm the convictions of all remaining defendants. We vacate the sentence of Olga Colon and remand for resentencing in light of our decision in United States v. Dunnigan, 944 F.2d 178 (4th Cir. 1991), cert. granted, 112 S. Ct. 2272 (1992), which held unconstitutional a sentence enhancement for perjury resulting from a defendant's trial testimony.
 
 I.
 
 2
 In February 1991, a federal grand jury indicted Robert Colon, Lovina Young, Olga Colon, Bernard Duplessis, Luis Ensuncho and Joseph Gonzalez on various drug conspiracy, possession and distribution counts related to cocaine sales in the Washington, D.C. area.[1] Joseph Gonzalez pled guilty to the conspiracy charged in Count 1 and cooperated with the government by testifying against his codefendants. At trial, the government presented evidence by way of testimony of undercover agents, testimony of cooperating informants, and recorded conversations. A summary of the relevant evidence follows.
 
 
 3
 In November 1988, DEA agents arrested Daniel Sneed in the Maryland suburbs of Washington, D.C. following three cocaine sales to an undercover agent. Sneed agreed to cooperate with authorities in exchange for reduced charges. He told DEA agents that his supplier for the cocaine was Robert Colon and that Colon used Bernard Duplessis and Lovina Young, Colon's wife, to deliver the orders. Sneed then agreed to act under cover to help the government convict Colon and his associates. Sneed agreed to infiltrate agent Emile Manara, posing under cover as Joe Luchi, a wealthy wholesale food distributor, into drug operations conducted by Colon and his associates.
 
 
 4
 Approximately eighth months later, on July 30, 1989, Sneed introduced Agent Manara to Colon as a potential buyer of large quantities of cocaine. During their conversation, Colon told Agent Manara that he had two suppliers, one in Florida and one in New York. He also said that his wife, Lovina Young, assisted him in the sales by counting money.
 
 
 5
 Agent Manara later ordered a kilo of cocaine from Colon. Taped phone conversations between the two on August 9 record Colon stating that he was having a problem with his supplier"Joe" in Florida. He suggested that he and Agent Manara travel to Florida to pick up the cocaine, but Agent Manara refused.
 
 
 6
 Several days later, Sneed and Agent Manara visited Colon at his home in Lake Ridge, Virginia, for the purpose of testing a cocaine sample. Young was present during this visit. Colon again told Agent Manara that Young was part of his cocaine business. Colon and Young brought a cocaine sample from a back room, which Agent Manara took with him for testing at the DEA laboratory.
 
 
 7
 Agent Manara pretended to be impressed with the sample and told Colon that he (Manara) would like to try again to arrange a purchase. Consequently, Agent Manara, Sneed, Colon and Young met at a Washington, D.C. restaurant to make arrangements. This time Agent Manara agreed to make the trip with Colon to Florida in order to be introduced to Colon's Florida supplier.
 
 
 8
 On August 28, Colon, Sneed and Agent Manara met at a hotel in Miami, Florida. Colon took Agent Manara's money to his supplier "Joe" at a hotel across the street while the other two remained in their hotel. DEA agents at this time identified "Joe" as Joe Gonzalez. This deal eventually fell through because of a past debt Colon owed Gonzalez, and the three men returned separately to Virginia.
 
 
 9
 Having no prior success in obtaining cocaine, Colon next decided to try his New York supplier. On September 7, 1989, Colon drove to New York with his family and picked up Sneed at LaGuardia Airport. They drove to the home of Luis Ensuncho[2] in Queens, whom Sneed recognized from prior drug purchases he and Colon had made in New York.[3] With Sneed, Colon, and Young present, Ensuncho brought out a quantity of cocaine and began to negotiate a price with Colon. They eventually agreed that Colon would wait in New York a few days until Ensuncho could supply a whole kilo of cocaine. Sneed flew back to Virginia to await Colon's return.
 
 
 10
 Several days later Colon returned from New York with a kilo. On September 13, Sneed and Agent Manara went to Colon's house to purchase the cocaine. Young was present during the exchange and participated in the transaction by way of taking Agent Manara's purchase money to a back room. At this meeting Colon inquired of Agent Manara whether he had a source of supply for ether.[4] Colon mentioned that his contacts in New York needed it for a cocaine paste lab.
 
 
 11
 The parties met a few days later regarding the ether sales. Agent Manara pretended to have arranged a source of supply for ether. Colon said that he was going to contact his ex-wife, Olga Colon, for the purpose of having her coordinate the ether sale since "she knew the people."
 
 
 12
 Approximately a month later, in October 1989, Sneed introduced Agent Manara to Olga over lunch. Olga told Agent Manara that she had spoken with Colon by phone and knew about the ether sales; she also knew about the failed attempt to obtain cocaine in Florida. She agreed to try to put a deal together for the ether with people she knew in New York.
 
 
 13
 The next meeting between Agent Manara and Olga occurred two days later, aboard the DEA's undercover yacht docked in Alexandria, Virginia. Videotapes of the meeting show a conversation the two had about cocaine. Agent Manara asked Olga if she could get him cocaine in quantities up to ten kilograms a month. Olga indicated that she had sources in New York and Florida and that she would try to put a deal together. She then asked Agent Manara if he knew"Bernard."
 
 
 14
 Shortly before Christmas of that year, Olga asked Sneed to provide a rental car for her courier to transport cocaine back from New York. A few days after receiving the car, Olga informed Sneed that the kilogram had arrived and that he could pick up the rental car for return at an Amoco station in Lake Ridge, Virginia (this was the station at which Bernard Duplessis worked). Sneed and Agent Manara later met Olga in front of her apartment in Chevy Chase, Maryland, and purchased the kilogram of cocaine.
 
 
 15
 Olga and Agent Manara next met for lunch on February 16, 1990. They again discussed the sale of ether, and Olga stated she would contact "Joe" in Miami.
 
 
 16
 In March 1990, Colon was arrested by local Virginia police officers for possession of 33 grams of cocaine. A search of his home pursuant to a state warrant turned up, inter alia, a rolodex with the names and phone numbers of Olga Colon, Bernard Duplessis, Luis Ensuncho, and Joe Gonzalez. Colon pled guilty to state charges and received a suspended sentence, probably due to the fact that he was diagnosed with AIDS. Shortly thereafter, Colon and Young moved to Hawaii.
 
 
 17
 Agent Manara continued to conduct business with other individuals charged in this conspiracy. On March 29, Sneed introduced Agent Manara to Bernard Duplessis at the service station where Duplessis worked. A tape recording was made of this conversation, in which Duplessis stated that he had transported cocaine from New York to Virginia for Robert Colon. Agent Manara and Duplessis discussed the possibility of a drug deal.
 
 
 18
 About a month later, in a recorded phone call, Agent Manara and Duplessis discussed the details of getting kilo quantities of cocaine from Duplessis' source in New York. Problems arose that prevented the consummation of the deal, but the two parties met on the DEA yacht a month later to again discuss the transaction. A video tape was made of this meeting. Duplessis stated that "Luis" was his source in New York and that he and Robert Colon had been doing business with Luis for years. He also admitted to being the courier for the kilogram of cocaine Olga procured for Agent Manara in December 1989. The two then made arrangements to travel to New York where Agent Manara could meet "Luis."
 
 
 19
 On August 9, 1990, Agent Manara met Duplessis at a hotel in New York. They took a cab to Luis Ensuncho's home in Queens where Agent Manara was introduced to Ensuncho. At the mention of cocaine, Ensuncho replied that his sister had just been arrested, and he thought the police were watching him. He refused to discuss a cocaine transaction, but agreed to call Duplessis to do business when his sister got out of jail.
 
 
 20
 Later that month, Agent Manara traveled to New York to again attempt a purchase from Ensuncho. Ensuncho was not at home, so Agent Manara left a note on the door. Ensuncho never replied because he had heard through Robert Colon that Agent Manara, Sneed and Olga Colon were informants.
 
 
 21
 In January 1991, federal agents executed arrest warrants against the named parties in this case as well as against Joe Gonzalez. Olga Colon, Bernard Duplessis and Lovina Young each testified at trial and presented versions of the facts substantially different from that of the government. Trial Tr. 384-421, 451-85, 505-35 (April 23-25, 1991) (copy in J.A. at 547-84, 614-45, 665-95).
 
 
 22
 After a joint trial of all defendants the jury returned a verdict of guilty as to each defendant on the conspiracy count (Count 1) and a verdict of guilty as to Robert Colon, Lovina Young and Bernard Duplessis on the distribution counts (Counts 3, 4, 5 and 6). The defendants were sentenced under the guidelines. Relevant to this appeal, the district court increased Olga Colon's base offense level by two points for obstruction of justice based on its finding that her trial testimony was a "blatant prevarication."
 
 
 23
 All defendants now appeal their convictions on various grounds as set forth below; Olga Colon also appeals her two-point sentence enhancement for obstruction of justice.
 
 II.
 
 24
 Initially, we dismiss the several claims of Robert Colon as moot. Robert Colon died of AIDS on February 22, 1992, while this case was pending on appeal. The objections to dismissal by Colon's codefendants do not convince us that there is any live issue for resolution in this regard. Accordingly, we grant the government's motion to dismiss Colon's appeal pursuant to our authority under Fed. R. App. P. 43(a).
 
 III.
 
 25
 The remaining appellants challenge the sufficiency of the evidence to support a single conspiracy. They contend that the government did not present any evidence of concerted activity among the defendants. The evidence, they argue, does not "show more than a group of people, already known to each other, independently dealing seriatim with an undercover agent and a confidential informant." Appellants Br. at 29.
 
 
 26
 Under the familiar rule of Jackson v. Virginia, jury convictions may not be set aside on grounds of insufficient evidence unless a reviewing court finds that no reasonable jury could have found the elements of the crime beyond a reasonable doubt. 443 U.S. 307, 319 (1979). In reviewing the evidence, all inferences are to be drawn in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 27
 The general elements of conspiracy are (1) an agreement between two or more persons (not including government agents), (2) to engage in unlawful activity. Morrison v. California, 291 U.S. 82, 92 (1934). Proof of a drug conspiracy may be shown by circumstantial evidence "such as [the alleged conspirator's] relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy." United States v. Brown, 856 F.2d 710, 711 (4th Cir. 1988) (citing United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984), cert. denied, 469 U.S. 1105 (1985)). An individual participant need not know of or participate in all aspects of the conspiracy. It is enough that the person knew the existence of a conspiracy and participated in furtherance thereof. Brown, 856 F.2d at 711; United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988); Collazo, 732 F.2d at 1205.
 
 
 28
 A single conspiracy may encompass numerous acts involving different actors over a period of time. It is characterized by one overall agreement or one general business venture, which can be shown by an overlap of key actors, methods and goals. Leavis, 853 F.2d at 218; United States v. Crockett, 813 F.2d 1310, 1316-17 (4th Cir.), cert. denied, 484 U.S. 834 (1987).
 
 
 29
 We find that the government adduced enough evidence at trial for the jury to find the existence of a single conspiracy to traffic in cocaine, centered around Robert Colon. The evidence, viewed in the light most favorable to the government, shows that Joe Gonzalez and Luis Ensuncho acted as suppliers for Robert Colon. On the distribution end of the conspiracy, Lovina Young and Bernard Duplessis both worked for Robert Colon. Olga Colon has the most tenuous relationship with this group. However, the evidence supports her knowledge of the conspiracy and her participation in cocaine sales with this group. She was introduced to Agent Manara by Colon, knew all the other conspirators, knew their roles in the conspiracy, and, in fact, worked with some of them to procure cocaine for Agent Manara. She even used the same methods as Colon, that is, she purchased from Ensuncho in New York and used Duplessis to transport the cocaine by rental car.
 
 
 30
 Appellants argue that our recent decision in United States v. Giunta, 925 F.2d 758 (4th Cir. 1991), counsels against finding a conspiracy in this case. In Giunta we held the government's evidence, consisting only of the testimony of government agents and unreliable recorded conversations, insufficient to support a drug conspiracy conviction. The government presented no independent evidence of an agreement between the parties and no drug deal was actually consummated. We stated there that the "danger of guilt being found on the basis of speculation from mere association between criminally disposed people, related criminal behavior, and like consideration is acute" and reversed the conviction. Id. at 765. Unlike Giunta, this case contains evidence of more than mere association; in addition to testimony of its witnesses, the government presented independent evidence of corroboration among the parties, culminating in actual cocaine deals being transacted.
 
 IV.
 
 31
 Luis Ensuncho and Lovina Young both challenge the sufficiency of the evidence to support their conspiracy convictions. Based on the government's evidence, a reasonable jury could easily have found that Ensuncho and Young were members of the conspiracy. See Jackson, 443 U.S. at 319. We consider both claims meritless and affirm their convictions.
 
 V.
 
 32
 Ensuncho next claims that the trial court erred in denying his motion for a mistrial after prejudicial evidence was brought in by a government witness at trial. Agent Manara testified during trial that he did not want to go to New York to purchase cocaine because "Luis had gotten in a shootout doing a dope deal." Trial Tr. at 106 (J.A. at 272). Defense counsel immediately objected and moved for a mistrial. The court denied the motion and issued a limiting instruction to the jury to disregard the remark.
 
 
 33
 We take no issue with the assertion that this remark was inadmissable evidence under Fed. R. Evid. 404(b). In the face of such an evidentiary violation, it is within the discretion of the trial judge to decide if the admission warrants granting a mistrial. United States v. Alonzo, 689 F.2d 1202, 1204 (4th Cir. 1982)." Before granting a mistrial, the court should always consider whether the giving of a curative instruction or some alternative less drastic than a mistrial is appropriate." United States v. Martin, 756 F.2d 323, 328 (4th Cir. 1985).
 
 
 34
 The trial court's conduct here does not appear to be an abuse of discretion. Agent Manara made only one brief remark concerning Ensuncho's prior criminal conduct. The judge immediately followed the remark with a curative instruction. In light of all the evidence introduced against Ensuncho, this remark was not so prejudicial as to warrant a new trial.
 
 VI.
 
 35
 Counsel for Olga Colon submitted a letter pursuant to Fed. R. App. P. 28(j) after defendants' brief was filed, requesting leave of this court to present an additional issue. Counsel asserts that in light of this Court's decision in United States v. Dunnigan, 944 F.2d 178 (4th Cir. 1991), cert. granted, 112 S. Ct. 2272 (1992), the trial court impermissibly enhanced Olga's sentence for obstruction of justice based the court's finding that she testified untruthfully at trial. In Dunnigan, we held that enhancement for perjury based on a defendant's trial testimony unconstitutionally infringes a defendant's right to testify in his or her own behalf. 944 F.2d at 185. Since the government concedes this issue, we remand her case for resentencing in light of Dunnigan.
 
 CONCLUSION
 
 36
 The recent death of Robert Colon has rendered his appeal moot. We find the remaining issues raised on appeal in this case meritless, with the exception of the Dunnigan sentencing issue raised by Olga Colon. Accordingly, we dismiss the claims of Robert Colon, we affirm the convictions of all other defendants, and we vacate Olga Colon's sentence and remand for resentencing in light of Dunnigan.
 
 
 37
 DISMISSED IN PART, AFFIRMED IN PART, AND VACATED AND REMANDED IN PART
 
 
 
 [1]
 The indictment charged conspiracy to possess with intent to distribute and conspiracy to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 846 (Count 1); possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C § 841(a)(1) (Count 2); and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts 3, 4, 5 and 6). None of the appellants were charged in all counts
 
 
 [2]
 Colon referred to his source only as "Luis." DEA agents later identified the source as Luis Ensuncho
 
 
 [3]
 Prior to his arrest in 1988, Sneed and Colon had made several trips to New York to purchase cocaine. On these trips, Sneed and Colon would fly to New York from Virginia. Colon would purchase the cocaine from Ensuncho and then arrange for Bernard Duplessis to drive a dealer car up from Virginia, pick up the cocaine from Colon, and drive back. Sneed and Colon would then fly back without the cocaine
 
 
 [4]
 Ether is used as a drying agent to transform cocaine paste into cocaine powder