61 F.3d 901
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Delroy Lindburgh AMBURSLEY, Defendant-Appellant.
 No. 94-5774.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 5, 1995.
Decided: July 12, 1995.
 
 ARGUED: Carl Lewis Tilghman, Beaufort, NC, for Appellant. Jane H. Jolly, Assistant United States Attorney, Raleigh, NC, for Appellee. ON BRIEF: Janice McKenzie Cole, United States Attorney, Raleigh, NC, for Appellee.
 OPINION
 HEANEY, Senior Circuit Judge:
 
 
 1
 Delroy Lindburgh Ambursley was convicted by a jury of conspiracy to possess and distribute cocaine base in violation of 21 U.S.C. Sec. 846. At the same time, Ambursley was acquitted of the substantive charges of distributing cocaine and of aiding and abetting in the distribution of cocaine. On appeal, Ambursley contends that the evidence presented at trial was insufficient to support the verdict, that the jury's verdicts were impermissibly inconsistent, and that the district court committed prejudicial error in admitting certain testimony by an alleged co-conspirator. In addition, Ambursley challenges the court's assessment of the quantity of drugs attributable to Ambursley for the purpose of calculating his sentence under the Sentencing Guidelines. We affirm both Ambursley's conviction and his sentence.
 
 I. SUFFICIENCY OF THE EVIDENCE
 
 2
 Under Glasser v. United States, 315 U.S. 60, 80 (1942), "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Our review of the record reveals ample testimonial and documentary support for Ambursley's conspiracy conviction. We need only summarize key portions of the evidence presented at trial. On March 6, 1992, Ambursley and Marcus Downs were arrested in the parking lot of a grocery store in Jacksonville, North Carolina. The Jacksonville Police Department had received a tip from a confidential informant that Marcus Downs was dealing cocaine. Acting on police instructions, the confidential informant contacted Downs to arrange a drug purchase. Downs agreed to meet the informant in the parking lot of the Piggly Wiggly store in Jacksonville. In the car with Downs at the time of the transaction was Ambursley. The police had equipped the informant with a hidden radio transmitter. Once inside Downs's car, the informant paid approximately $1,200 and received 21.7 grams of crack cocaine. As Downs was counting the money, the police moved in and arrested Downs and Ambursley. Both were later charged with possession with intent to distribute crack cocaine. Downs pled guilty on that count, while a jury found Ambursley not guilty.
 
 
 3
 To prove the existence of a conspiracy and Ambursley's participation in it, the prosecution offered at trial the testimony of two witnesses: Marcus Downs and Derman Murchison. Both were alleged to be co-conspirators of Ambursley and both testified pursuant to plea agreements with the government. While the manner in which the prosecution elicited Downs and Murchison's testimony at trial might charitably be labelled non-linear, we nevertheless find that the record, viewed in the light most favorable to the government, contains evidence sufficient to convince a rational jury beyond a reasonable doubt of Ambursley's involvement in a drug conspiracy. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 4
 In his testimony, Downs admitted to selling crack cocaine in Jacksonville, North Carolina, over the preceding five years. Downs testified that Ambursley worked to set up at least two purchases of powder cocaine in Miami and one in New York City, that Ambursley was present at the time of the transactions, that Ambursley assisted in the transportation of the powder cocaine back to Jacksonville, and that Ambursley was paid for his services with both drugs and money. Downs stated that the Miami and New York transactions each involved an exchange of approximately $24,000 for a kilogram of powder cocaine. Downs testified that all of these deals took place after their arrest on March 6, 1992. According to Downs, Ambursley supplied the drugs involved in the parking lot deal on that day. Downs also testified that following the arrest he paid for Ambursley's attorney and bond fees, and that he rented a house in Jacksonville on behalf of Ambursley and Ambursley's son.
 
 
 5
 The second co-conspirator witness, Derman Murchison, testified that Ambursley "persuaded [Downs and Murchison] to go to Miami where we could get [cocaine] at a cheaper price." Joint Appendix (JA) at 134. According to Murchison, Ambursley's brother in Miami served as the essential conduit for the transactions. Murchison testified that he, Downs and Ambursley drove from Jacksonville to the brother's apartment in Miami and that Ambursley's role was "to work up the deal," JA 143, and "to watch that everything went right and that we didn't get hit," JA 147. Ambursley, Murchison stated, was compensated for establishing the contact and for assisting with the transportation of the powder cocaine. In addition to the two Miami trips he participated in, Murchison indicated that he was aware that Ambursley participated in other Miami transactions. In general, Murchison stated, Ambursley "knew a lot of people, where we could get the stuff from, the drugs, at a cheaper price." JA 133-34. Murchison testified that Ambursley made a trip to Jamaica to investigate the possibility of obtaining a supply of cocaine there, but that the prices offered were unacceptably high. Murchison and Downs both testified that Ambursley had no job in Jacksonville and that his only means of support was the income he derived from dealing cocaine.
 
 
 6
 The crime of conspiracy incorporates two elements: "(1) an agreement between two or more persons (not including government agents), (2) to commit in concert an unlawful act." United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991) (citing Morrison v. California, 291 U.S. 82, 92 (1934)). Conspiracy may, and ordinarily will, be proven by circumstantial evidence, which must be "sufficient to permit the inference of the requisite agreement between the two to act in concert to commit the act." Id. Based on the record briefly summarized above, we conclude that the evidence presented at trial was sufficient to sustain the jury's verdict.
 
 II. CONSISTENCY OF THE VERDICTS
 
 7
 Ambursley contends that his conviction for conspiracy must be reversed because it is impermissibly inconsistent with his acquittal on the substantive count of possession with intent to distribute. Decisional law has foreclosed this argument, however. "[I]nconsistency is not a ground for voiding a verdict of conviction." United States v. Martindale, 790 F.2d 1129, 1134 (4th Cir.), cert. denied, 479 U.S. 855 (1986). Because conspiracy is "a separate and distinct offense from the substantive offense or offenses[,] ... one can be validly convicted under a conspiracy count even though acquitted of the substantive offense or offenses." Id. Under Dunn v. United States, 284 U.S. 390, 393 (1932), and its progeny, our role as an appellate court does not encompass efforts to divine the intermediate conclusions of fact reached by juries in the course of rendering their verdicts. Rather, we consider each count in the indictment "as if it was a separate indictment." Id. The right of the criminal defendant against wrongful conviction is secured by independent sufficiency review on each count of conviction. Accordingly, having found the evidence sufficient to sustain Ambursley's conspiracy conviction, we find no merit to the contention that the verdicts are impermissibly inconsistent.
 
 III. ADMISSION OF MURCHISON TESTIMONY
 
 8
 Ambursley assigns error to the district court's admission of the following testimony by Derman Murchison on redirect examination:
 
 
 9
 Q. Mr. Ambursley--why was he living in Jacksonville, North Carolina?
 
 
 10
 A. To sell drugs.
 
 
 11
 The objection of Ambursley's attorney was overruled.
 
 
 12
 We find no abuse of discretion. In his preceding testimony, Murchison detailed several joint enterprises and a variety of encounters with Ambursley. We conclude that the foundation laid was adequate to meet Federal Rule of Evidence 602's dictate that a witness have "personal knowledge of the matter" before testifying to it. We find no evidence suggesting that Murchison could not have known Ambursley's motivation for moving from Toronto to Jacksonville. On cross- and recross-examination, Ambursley's counsel had, and took, the opportunity to test the extent and reliability of Murchison's personal knowledge of Ambursley's affairs. The admission of the challenged testimony, however, was not in error.
 
 IV. ATTRIBUTION OF DRUG QUANTITIES
 
 13
 At sentencing, the district court found that Ambursley should be held accountable for at least 500 grams, but less than 1.5 kilograms, of cocaine base (crack cocaine). The defense contends that Ambursley should be held accountable only for the 21.7 grams of cocaine base found in the car at the time of his arrest with Marcus Downs on March 6, 1992--that is, the drugs at issue in the substantive count for which Ambursley was found not guilty. We believe that the record supports the district court's finding of fact.
 
 
 14
 At trial, Downs and Murchison both stated that Ambursley assisted with the procurement of powder cocaine on at least two trips to Miami and one to New York. According to their testimony, each trip involved the purchase of a kilogram of powder cocaine. The district court apparently found that Ambursley's involvement in one of those trips had been proven by a preponderance of the evidence. We detect no basis in the record to second-guess that finding. In addition, the scope of the conspiracy testified to by Downs and Murchison clearly embraced the conversion of the powder cocaine into crack cocaine to be sold on the street. Testimony at trial indicated that the conversion, or "cooking," process produced approximately 13 grams of crack cocaine for every 14 grams of powder cocaine cooked. Thus, we find no error in the district court's attribution to Ambursley of between 0.5 and 1.5 kilograms of crack cocaine, rather than one kilogram of powder cocaine.
 
 
 15
 In denying the objection to the drug quantities outlined in the Probation Office's Presentence Investigation Report, the district court also apparently found by a preponderance of the evidence that Ambursley should be held accountable for the 21.7 grams of crack cocaine found in Downs's car on March 6, 1992, and for another 76.8 grams of crack cocaine distributed by Ambursley's co-conspirators. Though we note that the attribution of these amounts, totalling 0.0985 kilograms, generates no increase in Ambursley's offense level, we find that the record amply supports the district court's finding.
 
 V. CONCLUSION
 
 16
 For the reasons outlined above, we affirm Ambursley's conviction. In addition, we find no error in the district court's calculation of Ambursley's sentence under the Sentencing Guidelines.
 
 AFFIRMED