Answer to Certified Question

Certified Question:
Pursuant Ordinance 21, Title 3, § 3.3.75, is the Indian status of the defendant an element that prosecution must prove?

Decision of the Court

I. Is the element of “Indianess” required:
To determine if the element of Indian status is a required element for the prosecution of a crime under § 3.3.75, this Court looks to the statute itself.
a. § 3.3.75:
§ 3.3.75 states that “[t]he Arizona Act Regulating Traffic on Highways (Arizona Statutes 28-401 et seq.) is hereby *424 incorporated into this Code by reference together with all amendments which have been or which may be made ...”[1] See Ordinance 21, Title 3, § 3,3.75. Reviewing the Arizona statutes, the term “Indian” is never mentioned in any of the laws. Rather, only the term “person” is used to designate the individuals who can be prosecuted under the law. Reading the statutes literally, since the term “Indian” is not used, it is not an element that the Prosecution has to prove in their case in chief. Further, since § 3.3.75 only states that the Arizona statutes were incorporated into the Hopi Code without mentioning any changes in the statutes, this Court is to assume that the Tribal Council did not want to change the wording of the statute. With this in mind, it is the conclusion of this Court that the element of “Indianess” is not a required element pursuant to § 3.3.75.
II. “Indianess” is a jurisdictional issue:
Since it is determined that “Indianess” is not an element under § 3.3.75, the next issue is whether “Indianess” is an issue at all in any trial proceeding.
In Hunter,[2] the Navajo Supreme Court held that the issue of “Indianess” was a matter to be considered under the court’s criminal jurisdiction. See Navajo Nation v. Cynthia Hunter [N.L.R. Supp. 429 (Nav.Sup.Ct.1996)], page 4. The proposition that “Indianess” is a jurisdictional issue is consistent with the Supreme Court’s holding in Oliphant v. Suquamish Indian Tribe, where the Court held that the Indian tribes had no general criminal jurisdiction over non-Indians. See Oliphant v. Suquamish Indian Tribe 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978). This Court similarly holds that the Indian status of the defendant must be determined to established the tribal court’s criminal jurisdiction.
a. Where does the burden fall?
With the determination that “Indianess” is a jurisdictional issue, the more difficult question is with respect to the allocation of the burden of proof.
i. The Burden Falls on the Defendant
In its Brief, the Prosecution, citing Hunter, argues that the burden should fall on a defendant to prove the element of “Indianess”. See Hopi Tribe’s Position on Certified Question of Law, page 2. As reason for their position, the Prosecution asserts that;
“frjequiring the Tribe to prove that such individuals are Indians for the purposes of establishing jurisdiction puts an undue burden on the Hopi Tribe. This forces the Tribe to attempt to obtain *425 Certificates of Indian blood or enrollment information from Nations across the West, from Arapahoe to Zuni and every Tribe in between. This can be a significant impediment to prosecution when the Tribe in question may not be able to provide the information or worse yet, will not cooperate in releasing said information.” Id, at 2.
The Prosecution’s position is consistent with the Navajo Supreme Court’s decision in Hunter. In Hunter, the Supreme Court held that it would be “unreasonable to require the Navajo Nation to prove that an individual is an ‘Indian’ because that information is in the hands of the defendant or more readily obtained by the defendant.” See Navajo Nation v. Hunter, N.L.R. Supp. 429 (Nav.Sup.Ct.1996), page 5. In addition, the situation would be further complicated by the faet that the Prosecution may not be able to question the defendant about his or her status due to the privilege against self-incrimination. Id. at 6. See also Ordinance 21, Title II, § 2.8.5[3]
After considering the Prosecution’s argument and the holding of the Navajo Supreme Court in Hunter, we see a number of problems in adopting Hunter’s holding. First, how would a defendant prove that he or she is not an Indian? Such a task would be difficult, time-consuming and financially burdensome to the defendant. As stated infra, an Indian is defined as “any person who is an enrolled member of any Federally recognized tribe or who has Indian blood and is regarded as an Indian by the society of Indians among whom he lives.” See also Ordinance 21, Title III, § 3.1.1. To prove that he or she is not an Indian, a defendant must first show that he or she is neither an enrolled member of any federally recognized tribe nor has Indian blood. This would require the defendant to produce the roll sheets of every Indian nation associated with the defendant and demonstrate that the defendant is not listed. Further, a defendant must produce his or her lineage to demonstrate that she has no Indian blood — this could possibility require the defendant to produce numerous generations to prove that he or she has no percentage of Indian blood. This is no simple task even if this Court assumes that a defendant would retain such quality information regarding his or her family tree. Once a defendant has fulfilled this requirement, the defendant must then demonstrate that he or she is not regarded as an Indian by the society of Indians among whom he or she lives. This would seem to be the easier of the two requirements to fulfill since the defendant can easily have neighbors sign affidavits stating that the defendant is not considered an Indian in their community.
Once the defendant demonstrates that he or she is not an Indian, the prosecution would be allowed to rebut the defendant’s position. This would lead to another problem that the Prosecution and the Navajo Supreme Court did not seem to consider. Once a defendant has made a case that he or she is not Indian, the prosecution has to present evidence to challenge the defendant’s position and persuade the judge that the defendant is an Indian. To present such evidence, the Prosecution must first find the evidence. Thus, the Prosecution has to commit their efforts to finding the defendant’s possible enrollment in a tribe or defendant’s Indian blood. Further, the prosecution has to interview individuals in defendant’s community to determine if he or she is considered an Indian. Consequently, one of the main reasons the Navajo Supreme Court and Prosecution cited for holding that the burden should *426 fall on the defendant is cut down. Regardless of who carries the burden, the prosecution still has to commit to the tough task of finding a defendant’s Indian status to either rebut the defendant’s position or to carry the burden.
ii. Burden on the Defendant to make a threshold showing and then shift the burden to the Prosecution.
To balance the interest of the parties, this Court believes that the burden should first fall on the defendant and then shifts to the prosecution once the defendant has made a threshold showing that he or she is not an Indian. Under this option, the defendant would have to raise the issue and then create a reasonable belief that he or she is not an Indian. Once the defendant fulfills this requirement, the burden will shift to the prosecution to prove beyond a reasonable doubt that the defendant is an Indian.
This position is consistent with the Ninth Circuit Court of Appeal’s opinion in United States v. Hester.[4] In Hester, the defendant was charged with crimes under the Federal Enclaves Act, 18 U.S.C § 1152 for sexually related crimes. See United States v. Hester 719 F.2d 1041, 1042 (9th Cir.1983). The Federal Enclaves Act provides for the prosecution of crimes committed in Indian country by non-Indians against Indian. However, the Act also provides that its coverage “shall not extend to offenses committed by one Indian against the person or property of another Indian.” See 18 U.S.C § 1152 [5]. With respect to this law, the court held that the prosecution did not have to raise the issue of Indian status to determine if the defendant fell into the exception provided by the Act. The court’s holding was based on the finding that:
“[i]t is more manageable for the defendant to shoulder the burden of producing evidence that he is a member of a federally recognized tribe than it is for the Government to produce evidence that he is not a member of any one of the hundreds of such tribes.” Id. at 1043.
The court went on to hold that “[o]nce the defendant properly raises the issue of his Indian status, then the ultimate burden of proof remains, of course, upon the Government.” Id.
The decision in Hester is persuasive in informing this Court of the federal position on this issue. However, Hester is unclear on the type of burden the defendant had to carry and the degree of proof the defendant had to show to “raise the issue.”
1. Type of proof and degree of proof:
The first question this Court has to answer is the type of proof the defendant is required to carry. Reviewing the decision in Hester, it would be clear that the defendant has the burden of raising the issue. Once the defendant raises the issue, he has *427 the burden to produce sufficient evidence to raise a reasonable belief on the part of the judge that the defendant is not an Indian. Allocating the burden in this manner is justified since the defendant would be the moving party on this issue. Once the defendant has made this threshold showing, the burden then shifts to the prosecution to carry the ultimate burden of proof in persuading the judge that the defendant is an Indian.
This option would be best to balance the interests of both defendants and prosecutors. Further, this arrangement is favorable on the grounds of policy and possession of proof. It is the policy of the law to discourage further litigation. As a result, the party that usually asserts a particular defense or argument is generally assigned the burden. In addition, the task of carrying this burden should be simple for the defendant. He is the party who is mostly likely to have or have access to the evidence needed to prove the fact.
This arrangement will also be favorable for the Prosecution since it will decrease the likelihood that defendants will file frivolous motions raising the issue of jurisdiction and thereby place the burden on the prosecution to prove the defendant’s Indian status. Otherwise, the prosecution will be required to prove the Indianess of the defendant in every case it prosecutes under § 3.3.75. This will not only lead to the further depletion of the prosecution’s resources but also the lost of valuable court resources to maintain such hearings.
The next major issue facing this Court is with respect to the degree of proof. For a defendant to shift the burden to the prosecution, the defendant should be required to demonstrate to the judge that there is a reasonable belief that the defendant is not an Indian. This degree of proof is best suited for the situation because of the flexibility that it offers the judge in considering the evidence. Further, the degree is not too burdensome on the defendant to attain and thus, seems fair to possible defendants who do not have the wealth of resources like the prosecution.
In proving his Indian status, the defendant is not limited to the type of evidence he or she is allowed to show. Given the different prongs of the test, the evidence provided to the court will vary from case to ease. To create a rigid standard of proof and method to weigh the evidence would run counter to the fluid nature of the evidence. With this reasonable belief standard, the judge is able to weigh the different evidence presented and not require the defendant to prove every prong to a specific standard. Rather, if one source of evidence is very strong then the judge may balance this with the other prongs to determine if there is sufficient proof of the defendant’s non-Indian status.
Once the defendant has created a reasonable belief, the burden shifts to the prosecution to persuade the judge that the defendant is an Indian. To sufficiently carry this burden, the prosecution must demonstrate beyond a reasonable doubt that the defendant is an Indian. This burden is consistent with the prosecution’s burden throughout the criminal proceedings.
In establishing this standard of proof, this Court referred to Morrison v. California.[6] In Morrison, the United States Supreme Court, citing to earlier decision in *428 the same case, held “that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecution and cast on a defendant.” See Morrison v. California, 291 U.S. 82, 88, 54 S.Ct. 281, 78 L.Ed. 664. The Court’s rationale is based upon a “balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression.” Id. at 89, 54 S.Ct. 281. In this case, the Supreme Court acknowledged the difficulty the state would face in proving that the person’s citizenship since “[i]n all likelihood his life history would be known only to himself and at all times to relatives or intimates unwilling to speak against him.” Id. at 88, 54 S.Ct. 281.
III. Definition of “Indian”:
The next pertinent question for this Court is what is the definition of an Indian. To define an Indian, this, will Court will look at Hopi Ordinance 21.
Ordinance 21, Title III, § 3.1.1 defines “Indian” as “any person who is an enrolled member of any Federally recognized tribe or who has Indian blood and is regarded as an Indian by the society of Indians among whom he lives.”
This definition of “Indian” is consistent with definitions given by federal case law. In-US v. Driver,[7] the federal court held that the test of whether a person is an ‘Indian’ for criminal jurisdictional purposes turns on whether the person has some Indian blood and whether the person is recognized as an Indian.
Since the Tribal Council has clearly defined “Indian” in Ordinance 21 and the definition is consistent with federal law, this Court will accept the definition of “Indian” under Ordinance 21.

. § 3.3.75 Traffic. The Arizona Act Regulating Traffic on Highways (Arizona Statutes 28-401 et seq.) is hereby incorporated into this Code by reference together with all amendments which have been or which may be made; provided, that the maximum fines and sentences shall be Five Hundred Dollars ($500.00) and six months in jail for each offense.

. In Navajo Nation v. Cynthia Hunter, the Supreme Court of the Navajo Nation dealt with a similar situation. In Hunter, the statutes under dispute also used the term “person” to designate the individual rather than “Indian.” The Navajo Supreme Court ultimately concluded that the prosecution was not required to prove the element of "Indianess.” The Navajo Supreme Court reasoned that under the Navajo Tribal Code, the prosecution is only required to prove the material elements of the crime and the personal status of the individual is not a material element within the requisite statute. Rather than consider the element of “Indianess” as an element of the actual crime itself, the Navajo Supreme Court considered “Indianess” as a jurisdictional matter.

. Ordinance 21, § 2.8.5 states, in pertinent part, that "[n]o Indian person shall be compelled in any criminal case to give evidence against himself[,]''

. As noted supra, United States v. Hester is a Ninth Circuit case and thus, is considered by this Court to be persuasive authority.

. Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country. This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively

. In Morrison v. California, the appellant appealed to the Supreme Court in regards to a conviction of conspiracy under the California Land Law. The appellant's main argument is that the lower court erred in requiring that defendants were required to carry the burden of disproving their guilt by proving their citizenship, as the law required.

. See United States v. Driver, 755 F.Supp. 885, 888 (D.S.D.1991).